FIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00452-CPG

TIFFANY GRAYS,

        Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,
EQUIFAX, INC.,
EXPERIAN INFORMATION SOLUTIONS, INC.,
TRANS UNION, LLC, and
INNOVIS DATA SOLUTIONS, INC.,

        Defendants.

---

**DEFENDANT NAVIENT SOLUTIONS, LLC'S RESPONSE TO
PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH DISCOVERY,
DEEM RESPONSES AS ADMITTED,
FOR SANCTIONS,
FOR LEAVE TO AMEND THE SCHEDULING ORDER, AND
FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

---

## I.    INTRODUCTION

Defendant Navient Solutions, LLC ("NSL"), provides the following response to Plaintiff's "Motion to Compel Defendant NSL's Compliance with Discovery & to Deem NSL Discovery Responses as Admitted & Sanctions Against NSL & Plaintiff's Motion for Leave to Amend the Scheduling Order & Leave to File Third Amended Complaint" ("Plaintiff's Motion") [Doc. 103].

The Court should deny all of Plaintiff's requests for relief. Specifically, the Court should not deem admitted Plaintiff's Second Set of Requests for Admissions because she improperly drafted and served them. To the extent it does deem them admitted, the Court should permit NSL to withdraw the admissions and substitute them with its served written responses (served three days after Plaintiff first raised their tardiness) because doing so would promote a presentation of

the merits in this case and Plaintiff cannot demonstrate actual prejudice, as required. Plaintiff's apparent request to compel a further response to Interrogatory No. 14 is without merit, as NSL has fully responded and Plaintiff does not seek individuals' contact information, which is all that the Court gave her permission to move to compel. Accordingly, Plaintiff's request for sanctions is wholly without merit, especially where she asks the Court to essentially preclude NSL from defending Plaintiff's meritless claims.

There are no grounds to grant Plaintiff's request to amend the scheduling order given that Plaintiff has not utilized all of her written requests nor taken a single deposition. The Court has already stayed any pending deadlines. Plaintiff's request is premature and without merit.

Lastly, Plaintiff's request for leave to file an amended complaint must be denied because she cannot show any viable basis for her undue delay in seeking amendment. Plaintiff's proposed amendments relate to matters known to her before the original Complaint was filed and have not been impacted by discovery. Her proposed amendments are also futile where the alleged conduct forming the bases for the proposed amended claims would all be barred by the applicable statutes of limitation.

## II.   ARGUMENT

**A.     The Court Should Not Deem Admitted Plaintiff's Second Set of Requests for Admission; or Alternatively, It Should Permit NSL to Withdraw the Admissions and Substitute Its Served Written Responses.**

*1.     Legal Standard.*

Fed. R. Civ. P. 36(a) states that a matter is admitted unless the party to whom the request is directed serves an adequate response within thirty (30) days. Here, Plaintiff asks that the Court deem her requests admitted.

1028932\307687198.v1

However, under Fed. R. Civ. P. 36(b), a court may also permit withdrawal or amendment of an admission when "[1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Raiser v. Utah* County, 409 F.3d 1243, 1246 (10th Cir. 2005) (*quoting* Fed. R. Civ. P. 36(b); *citing Perez v. Miami-Dade County*, 297 F.3d 1255, 1265 (11th Cir. 2002)). The first factor "'emphasizes the importance of having the action resolved on the merits, and is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.'" *Id*. (*quoting Perez*, 297 F.3d at 1266). The second factor requires the party who obtained the admission "to show it would be prejudiced by the withdrawal…Mere inconvenience does not constitute prejudice for this purpose." *Id.* "'The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required.'" *Id.* (*quoting Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987). Rather, the contemplated prejudice relates to a party's difficulty in proving its case, "*e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted.'" *Id.* (*quoting Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)).

   2. *Relevant Procedural History.*

   Plaintiff served her Second Request for Admissions ("SRFA") by email on Sunday, November 29, 2020. (*See* Declaration of Attorney Jordan S. O'Donnell ("O'Donnell Decl."), attached as **Exhibit 1**, at Ex. A). At that time, no agreement existed between the parties to serve discovery solely by email. (*See id.*, at ¶ 3). Plaintiff's email omitted Attorney O'Donnell, one of NSL's two attorneys of record. (*See id.*, at ¶ 2). The SRFA were served in a single document titled

3

"Plaintiff's Second Set of Discovery Requests to Defendants," which contained multiple discovery requests to three separate defendants. (*See id*, at Ex. B). The requests did not even identify defendants by their proper names, and looking at the title page, one would not know that they were directed to NSL (*See id.*). In fact, the document never states the terms "Navient Solutions, LLC," except in the caption. (*See id.*). As Plaintiff herself notes, "NSL's failure to respond was simple oversight of its counsel, as NSL did not have an objection addressed to the matter and NSL timely responded to the Requests for Production," included in the same document.

However, this "oversight" was understandable considering Plaintiff's confusing and improper means of service and drafting, and failure to include Attorney O'Donnell, who she has almost solely communicated with on behalf of NSL, on the email. NSL's counsel's oversight results from its procedures upon receipt of discovery requests. An attorney's assistant will initially prepare a document for responses to each set of discovery requests, that state the request followed by a blank "response" for the attorney to complete. (*See* O'Donnell Decl., at ¶ 5). Once this template is created by the legal assistant, the attorney does not then revisit the actual served copy of the requests because the requests are now included within the response template. (*See id.*). Based on the confusing nature of Plaintiff's drafting and failure to include all counsel, it is understandable that NSL would timely respond to one set of discovery requests but not the other.

Notwithstanding, NSL attempted to quickly resolve the oversight upon learning of it, providing its responses three (3) days after Plaintiff first identified the issue. Rather than focus on these important facts, Plaintiff's argument focuses on denigrating Attorney O'Donnell for citing how the oversight occurred (which is not, as Plaintiff suggests, "deflecting responsibility" or "hurling blame.") To the contrary, the email correspondence between the parties demonstrates NSL and its counsel have, at all times, been reasonable and professional.

4

At 10:47 P.M. MT on Monday, February 1, 2021, Plaintiff first raised NSL's failure to respond to the SRFA to Attorney O'Donnell. (*See* O'Donnell Decl., at Ex. C). Notably, this was more than a month after the December 31, 2020 due date for the SRFA (had they been properly served by U.S. mail). Plaintiff stated that if the responses were provided "prior to Wednesday" that week (meaning essentially the same day, February 2, 2021), "we may be able to reach an agreement without the Court's assistance." (*See* O'Donnell Decl., at Ex. C). Attorney O'Donnell indicated he had no record of receiving the SRFA by email on November 29, 2020 and later raised the improper means of service and drafting. (*See id.*). He also proposed that NSL provide its responses along with other upcoming discovery responses, due February 25, 2021. (*See id.*). Plaintiff declined, noting that the document requests had been responded to, while making no further effort to resolve the dispute. (*See id.*). Attorney O'Donnell asked Plaintiff to propose a new due date, which she declined to do, instead threatening to bring the dispute to the Court that afternoon, even though Plaintiff's initially proposed deadline of February 2, 2021 had not yet passed. (*See id.*). Attorney O'Donnell proposed a deadline of February 5, 2021, which would be sooner than the Court would likely have ruled on the dispute. (*See id.*). Plaintiff refused, noting "no prejudice" to NSL by her failure to properly serve the SRFA, and then stating that NSL had "provided no rule which requires [her] to accept anything other than the time outlined in the Rules." (*See id.*). This, naturally, raises the question of whether Plaintiff offered to resolve the parties' dispute in good faith, as she appears more interested in exploiting the inadvertent omission of NSL's counsel than receiving the responses. NSL served its Responses to Plaintiff's SRFA on February 4, 2021, just two days after her initial proposed deadline. (*See* O'Donnell Decl., at Ex. D).

1028932\307687198.v1

    3.    *The Requests Cannot Be Deemed Admitted Because They Were Improperly Served and Confusingly Drafted.*

Plaintiff's request to deem the SRFA admitted should be denied because she did not properly serve them on NSL's counsel. She only served the requests by email, without a prior agreement of the parties. *See* Fed. R. Civ. P. 5. Plaintiff also improperly drafted the SRFA, combining them with unclearly labeled requests to other parties and failing to even use NSL's actual name, which only bred confusion and increased the likelihood that requests would be overlooked. Although Plaintiff may have not done this intentionally, the effect is the same. Where Plaintiff solely seeks to exploit a technical violation to deem the SRFA admitted, she cannot ask the Court to look past her own errors.

    4.    *To the Extent the Court Deems the SRFA Admitted, It Should Permit NSL to Withdraw the Admissions and Substitute Its Served Responses.*

Should the Court find the SRFA were properly served and drafted, such that they are now, admitted, the Court should also permit NSL, pursuant to Rule 36(b), to withdraw the admissions and substitute its Responses to Plaintiff's SRFA, served on February 4, 2021. Both factors of the test stated in Rule 36(b) and explained in *Raiser* support this. First, the presentation of the merits will undoubtedly be served by permitting NSL to substitute its responses. *See Raiser*, 409 F.3d at 1246. The SRFA (which Plaintiff failed to submit to the Court) request that NSL admit certain facts related to its servicing and prior reporting of Plaintiff's student loans, including its responses to Plaintiff's credit reporting disputes. (*See* O'Donnell Decl., at Ex. D, Nos. 6, 8-12). However, many of these facts would be reflected in written documents (i.e., credit reports and ACDVs), which will undoubtedly be part of the summary judgment or trial record. Those documents would directly contradict the "admitted" requests. Having contradictory information would only frustrate the evaluation of Plaintiff's claims. The SRFA also ask NSL to admit that it had previously

6

"admitted it incorrectly reported" certain information, which NSL has repeatedly denied in this matter. (*See* O'Donnell Decl., at Ex. D, Nos. 13, 15). This would similarly lead to unnecessary contradictions between NSL's long-held positions and its "admissions." Lastly, Plaintiff asks that NSL admit certain requirements or guidelines related to her federal student loans, which are determined by the terms of the loan agreements and regulations issued by the United States Department of Education. (*See* O'Donnell Decl., at Ex. D, Nos. 14, 16-17). Conflating what NSL was obligated or instructed to do would further frustrate a determination on the merits. Letting the SRFA dictate what NSL reported—in contravention of what the actual documents show—and what it was required to do by contract and federal regulation would undoubtedly "eliminate any presentation of the merits of the case." *See Raiser*, 409 F.3d at 1246.

Further, Plaintiff cannot show the required prejudice in maintaining the action if the admissions are withdrawn. *See Raiser*, 409 F.3d at 1246. As noted, she apparently did not discover the omitted responses until more than a month after their purported due date, when she emailed Attorney O'Donnell. She also received NSL's responses within three days of her email. Plaintiff's only argument for prejudice is a vague claim that her "subsequent discovery requests were based upon the Second RFAs being deemed admitted under the Rules, Plaintiff has prepared for depositions based on these admissions, and Plaintiff's responses to NSL's discovery requests were based upon these admissions." Her argument is misleading and disingenuous. First, Plaintiff cannot credibly claim that having her requests admitted, when that information is ultimately reflected in written documents or federal regulations, would impact her. Second, the only additional discovery requests Plaintiff served between the SRFA's purported due date and when NSL served its responses were a clarified Interrogatory No. 14 related to her request for employee information (at the Court's instruction), as well as two document requests and interrogatories

7

related to "audits…to ensure compliance with the FCRA" and employee training. (*See* O'Donnell Decl., at Ex. E). These interrogatories have no relation to the matters in the SRFA. Plaintiff also has not taken any depositions in this case and did not even notice depositions until February 15, 2021, more than a week after she received NSL's responses. (*See* O'Donnell Decl., at Ex. F). Moreover, Plaintiff's discovery responses could not have been impacted by the SRFA because she hardly provided any. She "answered" only four interrogatories and provided a general response referring to pleadings and disclosures, which the Court has ordered her to supplement. (*See* O'Donnell Decl., at Ex. G). Her document responses only refer to documents produced in her initial disclosures. (*See id.*). Plaintiff is completely unable to show the requisite prejudice to deem the SRFA admitted, where discovery was unaffected, discovery has not concluded, and no dispositive motions have been filed. *See Spent v. Geolfos*, Civil Action No. 11-cv-01878-MSK-MEH, 2011 U.S. Dist. LEXIS 141457, at *22 (D. Colo. Dec. 7, 2011) (finding no prejudice where discovery not closed and no dispositive motions filed). The Court should deny Plaintiff's request and substitute NSL's Responses to Plaintiff's Second Request for Admissions.

**B.      NSL Has Appropriately Responded to Interrogatory No. 14.**

Plaintiff's argument regarding NSL's responses to her Interrogatory No. 14 is improper, and in contravention of the Court's order. The minutes following the parties' February 26, 2021 discovery conference gave Plaintiff leave to file a motion to compel "contact information for the individuals." [Doc. 102]. Instead, Plaintiff makes a vague and confusing argument about identifying "all persons associated with the Sources." She claims "NSL has responded indicating that the Source does not belong to a person but does not identify who or what the Source belongs." Plaintiff is not asking the Court to compel contact information, as permitted. Notwithstanding, she

8

never defined or requested "Sources," so NSL could not even respond, if such information were properly requested or available.

As has been repeatedly made clear to this Court (and Plaintiff), NSL has identified all individuals associated with the account notes, call recordings, and correspondence listed in Interrogatory No. 14, as well as their employment status. (*See* O'Donnell Decl., at Ex. H). It has also subsequently agreed to accept service of subpoenas for depositions for any current, domestic employees, and to provide last known contact information for any former employees or overseas contractors. Accordingly, the Court should reject Plaintiff's request related to Interrogatory No. 14.

## C.     There is No Basis for Sanctions Against NSL.

Sanctions under Rule 37 "'must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Carroll v. Allstate Fire & Cas Ins. Co.*, Civil Action No. 12-cv-00007-WJM-KLM, 2014 U.S. Dist. LEXIS 28061, at *15 (D. Colo. Mar. 4, 2014) (*quoting Roadway Exp., Inc. v. Piper*, 447 U.S. 752-763-65, 100 S. Ct. 2455, 65 L. Ed. 2d. 488 (1980)). But sanctions are not to be applied where a failure to disclose is substantially justified or harmless. *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004).

Plaintiff's argument for sanctions relates solely to NSL's response to Interrogatory No. 14. However, as noted above, the Court has already found that response sufficient. NSL objected to providing contact information on multiple legitimate grounds. In essence, Plaintiff seeks sanctions for a discovery "violation" that the Court has already found did not occur. Plaintiff cannot sustain her claim that NSL is attempting to "deprive" Plaintiff of using her 25 interrogatories, when she

has admitted only serving 17. That the Court permitted Plaintiff to file a motion to compel contact information, based on NSL's well-founded objections, does not constitute sanctionable behavior.

More egregious is Plaintiff's request "to prohibit NSL from opposing Plaintiff's claims that NSL willfully and recklessly reported the incorrect information of late payments in 2014 upon Plaintiff's consumer credit report, and when notified, negligently failed to perform an appropriate investigation and reinvestigations as required under the Fair Credit Reporting Act." In other words, Plaintiff asks the Court to rule in her favor on *all* of her claims because she did not receive some addresses she alleges that she is entitled to. Even if Plaintiff was entitled to more fulsome contact information NSL—which NSL maintains she is not—such a sanction would be beyond draconian. In any event, NSL has already agreed to provide contact information for certain individuals Plaintiff seeks to depose whose deposition subpoenas it will not accept (and has no obligation to). There is therefore no basis for Plaintiff's unprecedented request.

**D.     The Court Should Deny Plaintiff Leave to Amend Her Complaint.**

*1.     Standard for Leave to Amend.*

After the scheduling order's deadline has passed, a party seeking leave to amend their complaint "must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230. 1240 (10th Cir. 2014) (*citing Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). Rule 16 requires a good cause showing, or in practice, that the movant cannot meet the scheduling deadlines despite diligent efforts. *See id.*

Rule 15(a) permits the court's leave to be given freely when justice so requires. *Morse v. Bakken Oil, LLC*, Case No. 15-cv-00962-RM-NYW, 2016 U.S. Dist. LEXIS 28787, at *9 (D. Colo. Mar. 7, 2016). Justice is not required and "[l]eave to amend a complaint may be denied on

1028932\307687198.v1

'a showing of undue delay, undue prejudice to the opposition party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *See Markeen Inv. Grp. v. Colorado*, 925 Fed. Appx. 565, 570 (10th Cir. 2020) (*quoting Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005)). Untimeliness alone can be a sufficient basis for denial, when the moving party has no adequate explanation for the delay, even without a showing of prejudice to the opposing party. *Id.* (*citing Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006); *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991)).

   2.    *Plaintiff Does Not Demonstrate Good Cause for Leave to Amend.*

Plaintiff does not even make a cursory argument of good cause justifying her request for leave to amend. Instead, as discussed in detail below, she faults NSL's discovery conduct— allegations that have no basis in fact. Rather, it is clear Plaintiff had all required information and could have sought leave to amend significantly earlier. Her decision to now seek leave to amend constitutes undue delay and is grounds to deny her request.

   3.    *Plaintiff's Proposed Amendments are Unduly Delayed.*

Undue delay can be found when there is a "lack of adequate explanation for the delay or when a moving party knows or should have known of the facts in the proposed amendment but did not include them in the original complaint or any prior attempts to amend." *Jarboe v. Cherry Creek Mortg. Co.*, Civil Action No. 19-cv-01529-CMA-KLM, 2020 U.S Dist. LEXIS 157277, at *9 (D. Colo. Aug. 28, 2020) (*citing Minter*, 451 F.3d at 1205). Although that requirement may be met when a movant learns new information through discovery, as discussed below, Plaintiff cannot justify her undue delay where all of her "new" allegations concern events well prior to the filing of Plaintiff's original Complaint, and are based on documents she received before discovery

1028932\307687198.v1

commenced. *See Nesjan v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 1:18-cv-01489-PAB-SKC, 2020 U.S. Dist. LEXIS 84949, at *3-4 (D. Colo. May 14, 2020).

The deadline to amend pleadings in this case was November 30, 2020. Plaintiff presents no valid reason why she could not have sought leave to file her Third Amended Complaint ("TAC") prior to now. A review of the TAC demonstrates that Plaintiff had the knowledge to seek leave in advance of the amendment deadline, or at least significantly sooner than now. This is because the "new" allegations relate to events that occurred and information Plaintiff had <u>well before</u> the amendment deadline.

Plaintiff seeks to amend her allegations regarding NSL's alleged credit reporting in 2014 and any subsequent changes made to the reporting. As these allegations form the basis for her original Complaint, she indisputably had the information earlier than in this litigation. [Doc. 103-2, at pp. 4-5, ¶¶ 14-15]. Plaintiff also references various communications and servicing of her account (related to grace periods and late fees) in 2014 [Doc. 103-2, at p. 8, ¶ 26; p. 11, ¶ 49; p. 17, ¶ 103]. Her support for these new allegations are the Joint Scheduling Order, filed in September 2020 [Doc. 47] and letters from NSL to Plaintiff dated August 30, 2019 and October 9, 2020.[1] [Docs. 103-2, at p. 5, ¶ 15; 103-4, 103-5]. As Plaintiff describes these new allegations in her motion, they relate "to NSL['s] failure to honor the terms of the Master Promissory Note, NSL's failure to provide the Plaintiff an in-school deferment [in 2014], and to add punitive damages." None of these things were unknown or unavailable to Plaintiff before now.

She also now alleges that NSL "intently steered Plaintiff into consolidation" and failed to "abide by the terms and conditions of the [Master Promissory Note]." [Doc. 103-2, at pp. 16, ¶

---

[1] The August 30, 2019 letter was in Plaintiff's Initial Disclosures (O'Donnell Aff., at ¶ X). The October 9, 2020 letter was provided directly to Plaintiff by NSL's Office of the Consumer Advocate, which did not know of the pending litigation at the time (*Id.*, at ¶ X).

1028932\307687198.v1

91]. Plaintiff alleges NSL misled her "into loan consolidation and forbearance," misled her "into believing that her consolidated loans would receive the same benefits as unconsolidated loans," and misled her "into believing [NSL] was negligent…" [Doc. 103-2, at p. 22, ¶ 1]. But as the TAC itself states, Plaintiff consolidated her loans in August 2016. [Doc. 103-2, at p. 4, ¶ 13]. Plaintiff does not and cannot explain why she was unable to plead these allegations in her initial Complaint.

The TAC relies heavily on Plaintiff's complaint filed with the Colorado Attorney General's office, which she seeks to "incorporate by reference." [Doc. 103-2, at p. 1]. To the extent Plaintiff claims these new allegations could only have been discovered as a result of that complaint, thus making her attempted amendment timely, this contention is baseless. Indeed, Plaintiff's AG complaint was filed almost six (6) months ago, on September 24, 2020. (O'Donnell Decl., at Ex I). Plaintiff's written communications with the Attorney General's Office and NSL are dated September 29, 2020, and October 9, 10, 22, and 23, 2020—all more than a month before this case's amendment deadline (*Id.*). Plaintiff also spoke at length directly to a member of NSL's Office of Consumer Advocate regarding her dispute on September 9, 2020. (*Id.*).[2]

Unable to justify her delay, Plaintiff baselessly accuses NSL of a "discovery dance," in an attempt to convince the Court that her prior discovery disputes—which the Court has almost entirely rejected—precluded her from seeking leave to amend earlier. But Plaintiff's demand for contact information for NSL's employees does not relate to the new allegations in her TAC. In fact, none of her proposed new allegations are based on documents or information produced by NSL <u>after</u> the expiration of the amendment deadline.

---

[2] As discussed during prior discovery conferences, this AG complaint was filed, and subsequent related communications held by Plaintiff, without her disclosing the pending litigation (in which NSL is represented by counsel) to the Attorney General's office or NSL's representatives. Nor did Plaintiff provide notice to NSL's counsel of these communications. To the extent Plaintiff bases her proposed amendments on the complaint and resulting communications, such is in bad faith.

1028932\307687198.v1

The undue delay is further demonstrated by Plaintiff's email to NSL's counsel dated January 25, 2021, in which she attached a motion for leave and the proposed TAC. (O'Donnell Decl., at Ex. J). Plaintiff demonstrably had all the information she needed to seek leave in late January 2021, before the expiration of discovery, but decided to wait an additional six weeks without justification. Plaintiff accuses NSL "of attempting to overwhelm [her] and prolong these proceedings as long as possible." In reality, it is Plaintiff who seeks to prolong this matter by filing a motion for leave to amend <u>after</u> discovery ends without justification, and asking the Court to significantly amend and extend the parties' scheduling order.

> 4.    *Plaintiff's Proposed Amendments are Futile.*

"A proposed amendment is considered futile if the complaint, as amended, would be subject to dismissal for any such reason, including that the amendment would not survive a motion for summary judgement." *Watson v. Beckel*, 242 F.3d 1237, 1240-41 (10th Cir. 2001) (*citing Jefferson County School Dist. No. R-1 v. Moody's Investor Services, Inc.*, 175 F.3d 848, 858-859 (10th Cir. 1997); *Bauchman v. West High School*, 132 F.3d 542, 561 (10th Cir. 1997). This includes where proposed claims are barred by the statute of limitations. *See Bell v. City of Topeka*, 279 Fed. Appx. 689, 692 (10th Cir. 2008).

Here, Plaintiff's new allegations—besides those related to credit reporting—concern servicing of Plaintiff's student loans between 2014 and 2016 (when she consolidated her loans) [Doc. 103-2, at p. 8, ¶ 26]. Specifically, she alleges she was not provided grace periods in 2014 and references alleged misrepresentations related to her consolidation loan, obtained on or about August 11, 2006 [Doc. 103-2, at p. 4, ¶ 13]. These new allegations inform her causes of action for conversion [Doc. 103-2, at p. 13, ¶ 75], civil theft [Doc. 103-2, at p. 14, ¶ 82], unjust enrichment [Doc. 103-2, at p. 16, ¶¶ 91-92], breach of contract [Doc. 103-2, at p. 17, ¶ 103], violations of

14

1028932\307687198.v1

Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, *et seq.* [Doc. 103-2, at pp. 22-23, ¶ 125], violation of the Colorado Uniform Commercial Code, Colo. Rev. Stat. §4-1-301*, et seq.* [Doc. 103-2, at pp. 24-25, ¶¶ 132, 140], and negligence [Doc. 103-2, at p. 26, ¶ 144].

However, Plaintiff's potential additional claims informed by these "new" allegations are time-barred, where the operative date, per the proposed TAC, is August 11, 2016. The statute of limitations for conversion is three years. C.R.S. § 13-80-101(1)(h); *Curtis v. Counce*, 32 P.3d 585, 588 (Colo. App. 2001). For civil theft, it is two years. *Khan v. Springer*, Case No. 2014CV033847, 2015 Colo. Dist. LEXIS 2655, at *10 (Jul. 16, 2015) (*citing Michaelson v. Michaelson*, 923 P.2d 237, 241-42 (Colo. App. 1995)). Unjust enrichment and breach of contract both have three-year statutes of limitation where the claims are contractual and unrelated to the recovery of "a liquidated debt or unliquidated, determinable amount of money due to the person bring the action." *See* C.R.S. § 13-80-103.5(1)(a); *Cypress Advisors, Inc. v. Davis*, Civil Action No. 16-cv-01935-MSK-MEH, 2017 U.S. Dist. LEXIS 113961, at *25 (D. Colo. Jul. 21, 2017). The same analysis applies to Plaintiff's purported cause of action under the Colorado Uniform Commercial Code, which alleges a violation of C.R.S. § 4-1-304, the obligation of good faith in performance of a contract [Doc. 103-2, at p. 24, ¶¶ 129-134].  Plaintiff also seeks to add violations under C.R.S. § 5-20-109(1)(a) to her Colorado Consumer Credit Code claim [Doc. 103-2, at p. 22, ¶ 125(d)(1)(iii)-(v)]. But any claim arising out of this portion of the Consumer Credit Code, related to student loan servicers, must be brought within four years. C.R.S. § 5-20-118. Lastly, Plaintiff's negligence claim, which she alleges caused her personal injury, has a two-year statute of limitations. C.R.S. § 13-80-102(1). As these claims' limitations periods are all no longer than four years, Plaintiff's attempt to add them in 2021, when they would have accrued no later than 2016, must fail and render her proposed amendments futile.

The Court should deny Plaintiff's untimely and futile attempt to amend her Complaint.

**E.**   **The Court Should Deny Plaintiff's Request to Amend the Scheduling Order.**

Finally, Plaintiff has failed to demonstrate good cause for amending the scheduling order to permit her to take twenty-five (25) depositions and serve an additional ten (10) interrogatories and requests for admission. She has not taken a single deposition to date, nor used her current allotment of written requests. As Plaintiff notes, she has only served 17 of 25 interrogatories. She has also only served 23 document requests and 14 requests for admission. (O'Donnell Decl., at ¶ 14). Plaintiff makes no attempt to justify why so many depositions are necessary. This is not surprising, given that she has not yet taken the deposition of NSL's 30(b)(6) representative.

Good cause "cannot be shown merely be demonstrating that many people could have discoverable information." *Id.* (*citing Dixon v. Certaineed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996)). Moreover, this increase in depositions would undoubtedly be overly burdensome or duplicative, as they would surely focus on NSL's employees, causing both it and its employees annoyance and undue expense. *Id.*, at *5 (finding request to depose nineteen individuals is premature without first determining whether the necessary information can be derived from a smaller group). Rule 26(b)(2) requires discovery to be limited where the burden or expense would outweigh the likely benefit. *Id.*, at *6 (*citing* Fed. R. Civ. P. 26(b)(2)(C)(iii)).

Unable to justify her request, Plaintiff misrepresents the history of this matter in an attempt to persuade the Court to let her run wild with discovery. First, Plaintiff wrongly states NSL failed to identify individuals in its Rule 26 disclosures. NSL identified a corporate representative, whom Plaintiff has declined to depose to date. (O'Donnell Aff, at Ex. K). Although Plaintiff has requested the identity of employees who may have taken action on her student loan account over the years, it remains to be seen whether these individuals will have actual knowledge of her claims,

particularly considering the events in question occurred some seven years ago. NSL's disagreement with Plaintiff's many needless discovery disputes—the vast majority of which this Court rejected following discovery conferences—does not constitute a "refusal to participate in these proceedings as required under the Rules." As noted above, Plaintiff continues to harp on NSL's response to Interrogatory No. 14, even though the Court has already ruled on her dispute and NSL has provided all the responsive information it has.

Her claim that NSL has attempted to "deprive her" of the 25 interrogatories is also completely farcical. NSL has served multiple supplements to its responses at Plaintiff's request, in an effort to avoid needless discovery disputes. (O'Donnell Aff, at ¶ 16). Yet Plaintiff remains unsatisfied no matter what NSL does. Simply, Plaintiff has failed to provide any justification to permit the extraordinary relief she seeks. Plaintiff's request for this level of discovery was rejected by the Court previously, and she is unable to justify this renewed request. Rather, Plaintiff's claim that NSL is attempting to "prolong these proceedings" rings hollow where she now seeks to take more than two dozen depositions yet failed to notice a single one until just prior to the initial discovery deadline.

Lastly, Plaintiff's request to alter the deadlines in the Scheduling Order is yet another disregard for the Court's prior orders. During the recent discovery conferences, this Court was clear it would reset the Scheduling Order's dates after resolution of pending discovery disputes. Plaintiff ignores that and asks the Court to set new deadlines prematurely.

### III. <u>CONCLUSION</u>

WHEREFORE, Defendant Navient Solutions, LLC requests that the Court reject Plaintiff's requests for relief in her Motion to Compel Defendant NSL's Compliance with Discovery & to

1028932\307687198.v1

Deem NSL Discovery Responses as Admitted & Sanctions Against NSL & Plaintiff's Motion for

Leave to Amend the Scheduling Order & Leave to File Third Amended Complaint.


Dated: March 19, 2021

*/s/ Jordan S. O'Donnell*
**Dennis N. Lueck, Jr.**
Hinshaw & Culbertson LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone: 415-362-6000
Facsimile: 415-834-9070
dlueck@hinshawlaw.com

**Jordan S. O'Donnell**
Hinshaw & Culbertson LLP
53 State Street, 27th Floor
Boston, MA 02109
Telephone: 617-213-7000
Facsimile: 617-213-7001
jodonnell@hinshawlaw.com

*Attorneys for Defendant,*
*Navient Solutions, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2021, I served the following **Defendant Navient Solutions, LLC's Response to Plaintiff's Motion to Compel Compliance with Discovery, Deem Responses as Admitted, for Sanctions, for Leave to Amend the Scheduling Order, and for Leave to File Third Amended Complaint** to all parties or counsel of record by email as follows:

Tiffany Grays
legalgrays@gmail.com


 */s/ Jordan S. O'Donnell*
Jordan S. O'Donnell

1028932\307687198.v1