1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
  Case No. 20-cv-00452-WJM-SKC
3  _____

4  TIFFANY GRAYS,

5       Plaintiff,

6  vs.

7  NAVIENT SOLUTIONS, LLC,

8       Defendant.
   _____
9

10          Proceedings before S. KATO CREWS, United States

11  Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 11:31 a.m., January 11,

13  2022 in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                          APPEARANCES

19          TIFFANY GRAYS, Pro Se, appearing for the

20  Plaintiff.

21          MICHAEL KAUFMANN, Attorney at Law, appearing for

22  the Defendant.

23  _____

24

25                    TELEPHONE DISCOVERY HEARING

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURT:  All right, good morning.  This is
 6    Magistrate Judge Crews.  We will go on the record in
 7    20-cv-452, Grays vs. Navient Solutions, LLC.
 8              I'll confirm, Ms. Grays, we do have you on the
 9    line, ma'am?
10              (No response.)
11              THE COURT:  Ms. Grays, do we have you on the line?
12              (No response.)
13              THE COURT:  All right.  The record will reflect
14    the phone made the two beeps, which typically indicates
15    somebody has dropped off of the line and so we may have lost
16    Ms. Grays.
17              Do I have counsel for Navient Solutions?
18              MR. KAUFMANN:  Yes.  Good morning, Your Honor,
19    this is Mike Kaufman of Spencer Fane.
20              THE COURT:  Okay.  All right, Mr. Kaufmann, we
21    will wait a moment here and see if we get Ms. Grays back.
22              MR. KAUFMANN:  All right.
23              (Pause).
24              THE COURT:  Ms. Grays, is that you?
25              MS. GRAYS:  Yes, Your Honor.  My apologies, I hit
```

1    the wrong button.

2            THE COURT:  That's all right.  We are just getting

3    ready to take -- have you all enter your appearance.  And so

4    Ms. Grays, I'll just confirm we do have you on the line,

5    ma'am?

6            MS. GRAYS:  Yes, Your Honor.

7            THE COURT:  All right.  The record will reflect

8    that Tiffany Grays is the plaintiff in this case, she is

9    proceeding pro se and she is on the line.

10           And, Mr. Kaufman, I'll have you enter your

11   appearance again.

12           MR. KAUFMANN:  This is Mike Kaufman, on behalf of

13   Navient Solutions.

14           THE COURT:  Okay.  All right.  So I set this

15   matter to -- we still have outstanding discovery disputes

16   that arose several months or if not, a few months ago.  You

17   have seen my order at ECF159 where I made some rulings on

18   some of the points that were outstanding, but I had

19   questions regarding a few of these other requests that

20   remain outstanding that I wanted to discuss with you.

21           And so we will start with the plaintiff's

22   responses to some of these interrogatories.  And what I'm

23   looking at is -- Ms. Grays, these are your supplemental

24   response as to Interrogatories 3, 6, 7, 20, 21, 22 and 23.

25           One question I have for you, for example, is:  In

1    your responses to -- let's see -- so, for example, in your

2    response to 21 -- so 21 asks you to:  Please state all facts

3    which support your allegations that NSL has violated the

4    Colorado Credit Code as recognized in the 9th Count in your

5    complaint.  And you have provided references to documents.

6           In Number 22, it similarly asks you to:  State all

7    facts which support your allegations in the 10th Count in

8    your complaint.  And you refer to documents.

9           And same, similar thing with 23, which asks you

10    to:  State all facts which support your allegations that NSL

11    has committed negligence, as alleged in your 12th Count.

12    And you refer to documents.

13           We discussed before, which I think led to the

14    supplemental responses, that interrogatory requests which

15    ask you to state the facts that support an allegation, that

16    that's not the type of question that is appropriate for

17    trying to use Rule 33(d) and just point to a bunch of

18    documents.

19           I do note that when you responded to Interrogatory

20    15, for example, which asks you to state facts that support

21    your 3rd Count, you did state facts there.  Or when you --

22    also when you responded to Interrogatory 18, which asks you

23    to state facts regarding your 5th Count, you did state facts

24    there.

25           So you did it correctly with 15 and 18, but you

1  didn't do that with 21 -- or 20, 21, 22 and 23.  Instead of

2  providing facts like you did with the other responses, you

3  just pointed to documents.

4          So my question for you is -- I mean, ultimately,

5  you need to go back on those and provide the facts as

6  requested.  Is there some reason that you can't provide the

7  facts that pertain to these allegations in your complaint?

8          MS. GRAYS:  I believe I was providing the facts.

9  The documents are the facts that pertain to the negligence

10 and the unjust enrichment and so that -- that's why I stated

11 that.  Because I -- what was communicated was that the large

12 range of referenced documents was a part of the issue, I

13 went through and identified specific ranges of documents

14 within the large range to narrow the response, which I

15 believed was in alignment with the rules pertaining to

16 responding to interrogatories.

17         But based on looking at my response to 15 and 18,

18 I can see where the difference is.  You know, I pulled that

19 language from the complaint and added to this response --

20         THE COURT:  Okay.

21         MS. GRAYS:  -- which is basically what I did on

22 the other ones.

23         THE COURT:  Because it really is as simple as, for

24 example, or 20, you know:  Please state all facts which

25 support your allegations that NSL has violated Colorado's

1    Consumer Protection Act.

2         I mean, whatever that is, I mean, it's as simple

3    as you saying, you know, NSL violated the Colorado Consumer

4    Protection Act by, you know, doing X, Y and Z or not doing

5    X, Y and Z.  Or, you know, whatever it is you claim that

6    they did that you believe violates this act, it's really

7    just a matter of stating what those facts are.

8         And same thing for the other ones, which are

9    asking you to state the facts in support of whatever the

10   claim for relief is.  It's really just you explaining, you

11   know, what those circumstances are or what those facts are

12   or what happened that you contend supports that claim in

13   your case.

14        Does that make sense?

15        MS. GRAYS:  Yes.

16        THE COURT:  And, I will point you to -- there's a

17   case, it's called Mann v. XPO Logistic Freight,

18   Incorporated.  The citation is a Westlaw citation, it's 2017

19   Westlaw 3054125.  This is a District of Kansas case from

20   July 19, 2017.  And I will just read an excerpt from this

21   case -- and so we sometimes call these types of

22   interrogatories that ask you to state the facts that support

23   a claim as a "contention interrogatory."

24        And the excerpt from this case says:  This Court

25   has recognized, however, that the option to produce business

1   records would rarely constitute an appropriate response for

2   contention interrogatories because contention

3   interrogatories, by their very nature, seek information

4   regarding a party's opinion or contention.  It is difficult

5   to see how business records would provide this information.

6           The Court goes on to say:  Accordingly, in the

7   absence of any explanation from defendant as to how the

8   documents cited in each response to a contention

9   interrogatory fully answer that interrogatory, this Court

10  granted a motion to -- let's see -- fully answer the

11  interrogatory.  The motion is granted in this regard and the

12  defendant is ordered to supplement its responses to

13  contention interrogatories with written responses.

14          So the Court ordered, in that case, that party to

15  not rely on business records that identified but to actually

16  answer the question and state the basis for whatever

17  contentions they were making in your complaint.

18          But given the nature of these questions, again,

19  they are not the type that producing business records is

20  appropriate.  Instead, you can state the facts.

21          Do you have questions about that?

22          MS. GRAYS:  No, Your Honor.

23          THE COURT:  Okay.  So I will order that Ms. Grays

24  further supplement her response as to Interrogatories 20

25  through 23 by stating whatever those facts are, rather than

1   relying on a list of documents or relying on a Rule 33(d) to

2   attempt to answer those requests.

3         Mr. Kaufmann, do you have anything to add with

4   respect to those particular requests?

5         MR. KAUFMANN:  No, Your Honor.

6         THE COURT:  Okay.  So then, there's also 3, 6 and

7   7 -- I think actually 3 falls into that category as well,

8   Ms. Grays.  3 asks:  If you contend that any act by NSL

9   caused you any damages, identify all facts supporting your

10   contention.

11         Again, here you would just simply state, you know,

12   whatever the circumstances are that you contend is how NSL

13   unless damaged you.  I recognize that -- well, you say, "all

14   facts in the complaint," then I recognize the facts may be

15   stated there.  But, again, you can't just, for this type of

16   interrogatory, point to the complaint or point to a series

17   of documents.

18         You, instead, need to answer the question by

19   stating whatever the facts are that you contend is how they

20   damaged you.

21         Do you have questions about that, ma'am?

22         MS. GRAYS:  No, Your Honor.

23         THE COURT:  Okay.  Then I will also order that

24   Ms. Grays further supplement the response to Interrogatory

25   Number 3.

1        And then there is 6.  So 6 asks:  Have you applied

2    for credit and been denied in the past five years?  If your

3    answer is yes, please identify, including name, address and

4    phone number, who you applied for credit with, the dates, et

5    cetera.

6        And you have pointed to documents.  You have

7    indicated here your efforts to comply with Rule 33(d).  One

8    thing I wanted to explain to you was your response, carrying

9    over on page 4 of the document I'm looking at, you indicate

10   you don't have the application, you need to issue subpoenas,

11   et cetera.

12       You don't have to do those things.  All you need

13   to do is -- you know, based on what you know and what you

14   recall, you just answer this question based on that.

15       So you know, if -- even if you don't have complete

16   information, even though this is asking for it, so if you

17   know you applied for credit, you know, with the ABC Company

18   three years ago, but you don't have a copy of the

19   application, you don't recall the date, you know, that's

20   fine, you just say that here:  I applied for credit with the

21   following companies over the past five year, to the best I

22   can recall.  You know, ABC Company sometime in 2017.  The

23   Joe Smith Company some -- on or around June of 2020.  I

24   mean, whatever it is.

25       But if you don't have the complete information,

1   you are not obligated go out there and issue subpoenas and

2   do all of those sorts of things to get all of that

3   information.  You really can answer this interrogatory based

4   on, you know, what you know from the information you already

5   have in your possession and what you recall from your memory

6   about when you have applied for credit and what happened, or

7   you know, whether you were granted or denied, or whatever

8   the circumstance was, as responsive to this question.

9           Do you have questions about that, Ms. Grays?

10          MS. GRAYS:  No, I don't have any questions about

11  that.  I just think that that is overly burdensome.  The

12  information is readily attainable in the documents I

13  identified with who it was and if -- and based on my credit,

14  if I -- if it doesn't show on my credit, I was denied, which

15  my credit reports are made available, as well.

16          So to have me go through and cherrypick the

17  information that defendants have in their own possession is

18  burdensome.

19          THE COURT:  And so what are these documents here

20  you have identified?  Are these your credit reports?

21          MS. GRAYS:  They are credit reports and they are

22  denial adverse action letters.

23          THE COURT:  Okay.  And so Mr. Kaufman, I was

24  unaware of nature of what these documents.  But that would

25  seem to be responsive from a 33(d) perspective to Number 6.

1                 Am I missing something?

2                 MR. KAUFMANN:  No.  I think what Navient is

3      looking for is just to, you know, confirm that there has

4      been nothing else beyond what is disclosed in these

5      documents here.  And if there is nothing else responsive to

6      that request, and the plaintiffs can confirm that in

7      writing, I think that would be fine for Navient's

8      standpoint.

9                 THE COURT:  Am I missing something in terms of --

10     I mean, if she did apply for credit, wouldn't it be

11     reflected in the credit reports?  Are there circumstances in

12     which she might apply but it wouldn't be in any report?

13                MR. KAUFMANN:  I'll be frank, Your Honor, I'm not

14     aware of -- I wouldn't pretend to be a specialist in issues

15     like this.  I'm not aware of any such applications that, you

16     know, wouldn't show up in a report like that.  I don't know

17     that there aren't, you know.  Whether an application at a

18     certain stage would be processed but denied, maybe that

19     wouldn't show up.  I'm not sure.

20                My presumption, though, would be that anything --

21     any application that is submitted and considered and

22     previously denied would show up in a credit report.  I think

23     that we just want to have confirmation, you know, is that

24     what we have before us is all there is the universe of

25     responsive information.

1    THE COURT:  Okay.  Well, and what you just copy of

2  stated isn't how Number 6 asks the question, and I'm not

3  going to rewrite this discovery request.  So based on the

4  understanding that the responsive documents are Ms. Grays's

5  credit reports, I find that she has sufficiently answered

6  Interrogatory Number 6 and I won't require any further

7  supplement by Ms. Grays to Interrogatory Number 6.

8    And then that brings as to Interrogatory Number 7,

9  which is the last one in terms of the plaintiff's responses

10  on my list.

11    And, let's see.  Based on the supplemental

12  response, I construe that supplemental response as an

13  objection to this Interrogatory Number 7 being overly broad

14  and I will sustain that objection.  I do find it's overly

15  broad and it's vague:  Identify all documents including any

16  and all communications pertaining to each item of damage.

17    That's vague and ambiguous in the way that that's

18  stated.  So I will sustain that objection and won't require

19  any further supplementation by Ms. Grays to Interrogatory

20  Number 7.

21    Then we have defendant's objections to Request for

22  Admission Numbers 9 and 13.  So Request Number 9 asks the

23  defendant to admit:  That of the aforementioned 21 loans in

24  November 2014, NSL reported plaintiff's payments is 90 days

25  late on all accounts, except loans ending in 0811 or 5200.

1   NSL has objected saying this is vague and confusing.  And

2   then without waiving that objection, or those objections,

3   neither admits nor denies.

4           So my question, Mr. Kaufman, is -- and it goes on

5   to say:  Plaintiff had more than 21 loans, et cetera, so you

6   can't determine which loans or period of time the request

7   refers to?  But that the last part of the request seems to

8   be specific when it says:  Except loans ending in these

9   particular numbers.

10          So can't -- is it the case that your client cannot

11  go back and look at its documents to determine whether it

12  reported 90 days late -- oh, I see:  Except loans ending in

13  that number.

14          Well, explain your objection further, Mr. Kaufman,

15  because I'm not quite following.  If your client has these

16  records or reports or what have you, why can't it just go

17  back and look at the documents and admit or deny this

18  request.

19          MR. KAUFMANN:  Well, just one moment, I'm sorry.

20  My PDF closed while I was trying to get to it, so I'm

21  pulling it back up.

22          (Pause).

23          So, Your Honor, I believe as it's written is

24  indeterminate as to what loan it's referring to.  She

25  references -- she references 21 loans, but she has more than

1    21 loans that are being serviced by NSL.  So I mean, I

2    suppose that -- like I guess we can't even, you know, just

3    as to answer as to all loans with the exception of those two

4    because she apparently is referring to 21 specific loans.

5    Without further information, you know, NSL is not able to

6    determine, based on that statement, whether that is

7    something that can be admitted or denied.

8             Essentially, there is more than 21 loans in

9    between those two, and without specifying which 21, we can't

10   -- we can't provide a response to that request.

11

12            THE COURT:  Ms. Grays, are you referring to --

13            MR. KAUFMANN:  If she can clarify, I think we

14   would be able to respond to that.

15            THE COURT:  Okay.  So Ms. Grays, are there

16   specific 21 loans that you are referring to here, or that

17   this request deals with?

18            MS. GRAYS:  Yes.  I could just narrow it to the

19   loans in which Navient reported in November of 2014 a late

20   payment.

21            THE COURT:  Is that sufficiently specific for you,

22   Mr. Kaufmann, to be able to answer that?

23            MR. KAUFMANN:  I'm sorry, would you say that

24   again.

25            MS. GRAYS:  The loans in which Navient reported a

1   late payment in November of 2014.

2          MR. KAUFMANN:  Okay.  So just so I understand it,

3   we read in the request, with that qualification, I'm not

4   sure I understand the request, because it seems to be -- you

5   know, it seems to be just kind of circular at that point.

6          MS. GRAYS:  I can rephrase the whole request.

7          THE COURT:  I mean, if you --

8          MR. KAUFMANN:  (Indiscernible).

9          THE COURT:  Hold on one second.  Ms. Grays, is

10  essentially asking them to admit that they did not report

11  loans ending in 0811 and 5200 as 90 days late in

12  November 2014?

13         MS. GRAYS:  It would be:  Admit that in

14  November 2014 NSL reported 90-day late payments on account.

15         MR. KAUFMANN:  Can you -- can you specify the

16  accounts?

17         MS. GRAYS:  The accounts Navient had.

18         THE COURT:  So you are just asking them to admit

19  that November 2014 they reported some of your account 90

20  days late?

21         MS. GRAYS:  Correct.

22         MR. KAUFMANN:  So are you just saying any account

23  that you have with -- or had with Navient, whether it's one

24  or more of them and without specification, did Navient

25  report any of those accounts more than 90 days late.  Or I

1  guess, if I would write it, I don't know how helpful that

2  would be to you.  I don't know if there is more

3  specifications you would want to include, you know, if there

4  were certain loans.  I assume that you have in mind that you

5  could list them in that request and Navient could admit or

6  deny that in November 2014 reported that it was late.  It

7  seems to me that might be a good idea -- I mean, we can

8  respond to what we have right now, or what you just said,

9  but I don't know how helpful that would be to you.

10        MS. GRAYS:  I just -- I don't think that -- the

11  fact of the matter is, is if you did it or not, that's

12  really what it is.  So I'm fine with it being just you

13  admitting that in November 2014 that Navient reported 90-day

14  late payments on accounts I had with Navient to the credit

15  bureaus.

16        THE COURT:  All right.  So can you answer that,

17  admit or deny that, Mr. Kaufmann?

18        MR. KAUFMANN:  Yes, Your Honor.  It might be

19  helpful for us if you could phrase that request in one

20  sentence for the record and then Ms. Grays can confirm that

21  that is what she is asking and then we can get that in the

22  transcript and (indiscernible) respond.

23        THE COURT:  And I don't think I would frame it any

24  differently than Ms. Grays just did.  But, as I understand

25  the request -- Ms. Grays, you can correct me if I misstate

1   it -- but I believe it is:  Requesting Navient to admit that

2   in November 2014 it reported accounts 90 days later that Ms.

3   Grays had with Navient.

4         MS. GRAYS:  To the credit bureau -- credit

5   reporting agencies, excuse me.

6         THE COURT:  So:  Admit in November 2014 NSL

7   reported 90 days late -- I'm sorry.

8         Admit in November 2014, Navient reported to credit

9   reporting agencies accounts Ms. Grays had with Navient as 90

10   days late.

11         Is that accurate, Ms. Grays?

12         MS. GRAYS:  Yes.

13         THE COURT:  Did you get that, Mr. Kaufmann?

14         MR. KAUFMANN:  And that takes into consideration

15   one or more of any of the accounts that Ms. Grays has that

16   are certifying Navient?

17         THE COURT:  Well, do you -- is it not clear

18   enough?  I mean --

19         MR. KAUFMANN:  I guess -- I will just say that the

20   way that I interpret what Ms. Grays has proposed, she just

21   wants to know whether Navient has reported any of her

22   accounts being 90 days late at that time.

23         THE COURT:  Right.

24         MR. KAUFMANN:  And so that's what I'm going to

25   advise my client --

```
 1              THE COURT:  Yes.

 2              MR. KAUFMANN:  -- when we're preparing a response.

 3              THE COURT:  Right.

 4              MR. KAUFMANN:  But if Ms. Grays -- if that's not

 5    what you have in mind, just let me know so we can get what

 6    you need.

 7              THE COURT:  Right.  And I appreciate that, Mr.

 8    Kaufmann.  I think you are overthinking it.  I think it is

 9    as simple as:  In November 2014, whatever accounts Navient

10    has, did you report any of those accounts 90 days late?

11              MR. KAUFMANN:  Okay.

12              THE COURT:  It doesn't matter what the account

13    numbers are, it doesn't matter -- I don't know -- any other

14    particulars you might be worried about or thinking about the

15    account.

16              It's as simple as there's accounts with Navient

17    and in November of 2014 Navient reported certain accounts or

18    any of the accounts as 90 days late to credit reporting

19    agencies.

20              Right, Ms. Grays?

21              MR. KAUFMANN:  I think we're on the same page.

22    I'll respond to that with my client.

23              THE COURT:  Okay, Ms. Grays, am I right?  It's as

24    simple as that?

25              MS. GRAYS:  It is, Your Honor.
```

1          THE COURT:  All right.  So then Request for

2     Admission 13, this asks:  Admit that as part of the formal

3     investigation conducted by plaintiff -- or, I'm sorry,

4     conducted between plaintiff and NSL pursuant to the Colorado

5     Student Loan Servicer Act, NSL admitted it incorrectly

6     reported the 150-day late payment and would remove it.  NSL

7     has raised various objections here:  Vague, confusing, not

8     an adequate definition of formal investigation conducted

9     between plaintiff and NSL, pursuant to the Colorado Student

10    Loan Servicer Act.  Has further objected, to the extent the

11    question assumes a formal investigation occurred, and then

12    subject to and without waiving the objections, NSL has

13    indicated it cannot admit or deny.  But then ultimately

14    denied that it ever admitted to plaintiff that it

15    incorrectly reported any information.

16          So my first question -- my first question is to

17    you, Ms. Grays:  With that very last part, they deny that

18    they ever admitted to you that they incorrectly reported

19    information, isn't that ultimately responsive to your

20    request?

21          MS. GRAYS:  My issue with it is it's not in

22    compliance with the rules pertaining to request for

23    admissions in that the letter from the Colorado Attorney

24    General specifically states that the 150-day late payment

25    was reported incorrectly.

1          THE COURT:  As a finding by the State or as an

2    admission by Navient?

3          MS. GRAYS:  It was a part of the formal

4    investigation.  Through that investigation, it was

5    determined that that 150-day late payment was incorrectly

6    reported to the credit reporting agencies.

7          THE COURT:  And so is your issue that their denial

8    is inconsistent with that letter?

9          MS. GRAYS:  Correct.

10          THE COURT:  Okay.  And so I think we have had this

11    conversation before, Ms. Grays, in terms of that type of

12    circumstance in discovery.  You know, if they choose to deny

13    it, if that's their response, that's their response.  The

14    Court can't make somebody admit something even in the face

15    of what may seem to be evidence that this answer is in

16    correct.

17          The way you deal with that in a civil case is you

18    use that information at trial to demonstrate the

19    inconsistency and call into question the witness's or that

20    party's credibility.

21          So if you feel you have inconsistent or you have

22    got a response from them that's inconsistent with the

23    evidence, that's something that you would use and deal with

24    at trial to raise credibility issues, as opposed to, you are

25    trying to ask the Court or somehow forcing them to change

1   their answer.

2        That's not what we do in discovery and Courts

3   don't order parties to change their answers to written

4   discovery in light of the evidence.  If they create an issue

5   for themselves by answering one way when certain evidence

6   seems to suggest something else, then, you know, that's

7   their prerogative ultimately.

8        MS. GRAYS:  Understood, Your Honor.  I just

9   believe that according to the rules pertaining to requests

10  for admissions, that in addition to it facially being

11  incorrect, the denial does not fairly respond to the

12  substance of matter.  And so if they are denying something

13  that occurred based on it being vague, based on not

14  understanding what formal investigation is, that's not

15  responding to the substance of the matter.

16       THE COURT:  And, so Mr. Kaufmann, with respect to

17  those objections, I mean, is it as confusing as you suggest

18  by the way of your objections?

19       MR. KAUFMANN:  I didn't initially think it was

20  that confusing, but I feel like I've gotten maybe a little

21  more confused based on Ms. Grays's explanation.  As I

22  understand the situation, after Ms. Grays filed the suit

23  against Navient and the other financial entities, she just

24  submitted a complaint against Navient with the -- excuse

25  me -- Colorado Attorney General's Office, and then during

1   that, I believe conferred with (indiscernible) employees

2   with Navient, I guess it would be, you know, the customer

3   service or complaints department essentially regarding

4   credit reporting issues that she has raised with this.  And

5   I have been asked to -- Navient's attorneys in the case

6   (indiscernible) going on, and at some point the Navient

7   employee, what I will refer to as the customer service

8   division, essentially changed to a credit report -- well,

9   information provided to a credit reporting agency in

10  response to Ms. Grays's request.  So that's my understanding

11  of the situation.

12          As to, you know, whether Navient incorrectly

13  reported some things at a given time, I think -- I think

14  that we have -- we are fairly clear on our response to the

15  request for admission that Navient denies ever incorrectly

16  reporting the information requested or the information

17  identified in the request.

18          So I guess as far as Navient goes, I think that,

19  you know, we would stand by our objection to the requests

20  unless, you know, the Court disagrees or Ms. Grays want to

21  clarify it in another way.

22          THE COURT:  So Ms. Grays, can you clarify that:

23  Incorrectly reported -- what was the reference from the --

24  letter from the State that you read earlier?

25          MS. GRAYS:  In the letter from the Attorney

1  General on October 9, 2020 at page 2 regarding the credit

2  reporting:  We are happy to advise we have submitted an

3  update to the consumer reporting agencies to replace the

4  150-day past due remarks to 120 days for the end of

5  May 2014.  Please allow sufficient time for the consumer

6  reporting agencies to update your report.

7          THE COURT:  But you read something earlier that I

8  think was to the effect that they determined that something

9  was incorrectly reported.

10         MS. GRAYS:  Right, that 150-day past due.

11         THE COURT:  Right.  So what is the reference --

12 are -- was there a sentence in the letter to that effect,

13 that we have determined 150 days was incorrectly reported or

14 something like that?

15         MS. GRAYS:  Well, what I just read is saying that

16 they determined it was wrong and that they were going to

17 replace the 150-day with the 120-day.

18         THE COURT:  I just thought earlier there was a

19 sentence you read that used the phrase to the effect of:  We

20 have determined the 150 days was incorrectly reported.  I

21 might have misheard you.

22         MS. GRAYS:  Yeah, you have the -- you have --

23 yeah -- I don't know.  The other request is just saying that

24 it incorrectly reported the 150-day late payment.  Their

25 objection saying they cannot determine what 150-day late

1    payment I'm referring to.  I'm referring to the one that's

2    due to the Colorado Student Loan Servicer Act investigation

3    found.  And that's noted in the Colorado Attorney General's

4    letter on October 9, 2020.

5            If that's more specific for Mr. Kaufmann to

6    reference which 150-day late payment I'm referring to, then,

7    hopefully, they can respond to the substance of the matter.

8            THE COURT:  Is that more specific, then, Mr.

9    Kaufmann?

10           MR. KAUFMANN:  That is (indiscernible) -- Navient

11   has already responded to the request by denying that it

12   incorrectly reported information to credit reporting

13   agencies.  I guess I'm just not sure what plaintiff wants

14   Navient to do.  (Indiscernible) she was just not happy with

15   the responses given.  I guess I don't understand it, I don't

16   know.  I see what -- what you are getting at, Ms. Grays.  I

17   just don't know that there there's anything that Navient can

18   further provide based on that.

19           THE COURT:  I think it's fair, with the confusion

20   noted by your objections and the further confusion you said

21   you received more confusion today with Ms. Grays's response,

22   even if the answer is not going to change, I think it's fair

23   to get the defendant to respond -- to admit or deny whether

24   -- and so by clarifying what 150-day late payment she is

25   specifically referring to, which is the 150-days late

1  payment referenced in the letter by the Attorney General,

2  that she is seeking an admission or a denial that that

3  150-day late payment was incorrectly recorded.

4       So your answer may not change, but I think with

5  these objections here, to the effect that this is confusing

6  and we don't know what 150-day late payment you are talking

7  about, with the clarity of which 150-day late payment she is

8  talking about, I think it's fair to have your client admit

9  or deny that specific question with that clarity.

10      MR. KAUFMANN:  Okay, we can do that.

11      THE COURT:  Okay.  So Request Number 13 should

12  read -- or Request Number 13 that the defendant should

13  respond to is:  Admit that NSL incorrectly reported the

14  150-day late payment that is referred to the letter from the

15  Attorney General.

16      Is that accurate, Ms. Grays?

17      MS. GRAYS:  Yes.  I would just add the date of the

18  letter on October 9, 2020.

19      THE COURT:  Okay.

20      MR. KAUFMANN:  That's what I was looking at.

21      THE COURT:  Okay.  All right.  So I have ordered

22  each side to provide some supplemental responses and I will

23  order that those response -- supplemental responses be

24  provided or exchanged on or before July 25 -- I'm sorry.

25  Let me change that.  I'm sorry.  I'm looking at not January.

1          We will say January 21.  And I understand that you

2     all may have some other discovery disputes that are pending

3     that you mentioned to my clerk and she indicated we could

4     talk about them today.  I think what I would like to do in

5     your case, because you all tend to have a fair amount of

6     discovery disputes and they usually result in me requesting

7     that you all put something in writing for me to take a look

8     at, I think what I would rather do is simply authorize you,

9     the parties, to file discovery motions.  So if it's a motion

10    to compel, a motion for protective order, whatever it is,

11    but file motions related to whatever your discovery issues

12    are.  You would still need to confer and see if you can work

13    issues out such that there is no need to file a motion.  But

14    ultimately just file motions and then that will give me

15    something in writing from the start and then we could take

16    it from there.

17         If somebody files a motion, I'm likely going to

18    issue an order giving you deadline for the response.  So the

19    typical 21 days to respond and 14 days to reply, you should

20    have that in your mind, but it's likely if something is

21    filed, I'm going to issue an order with a shorter timeframe

22    for a response and indicating whether or not I feel I want

23    to reply.

24         Then once I get that motion and I get that

25    response, I can either issue a written order or I will issue

1 an order setting another telephonic conference and we can

2 just address the issues on the record.

3        Ms. Grays, do you have questions about -- so what

4 that would mean is you don't need to jointly call -- you

5 wouldn't jointly call Chambers about a discovery dispute.

6 You would, instead, just confer with each other about your

7 dispute.

8        If you are going to file a motion, you need to be

9 specific.  So, Ms. Grays, this is partly for you to

10 understand as a pro se party.  If, for example, you feel

11 they need to give better answers or more full answers or

12 something to written discovery, you would confer with Mr.

13 Kaufmann over that.  Tell him what you think he needs to do.

14 Be specific, you know.  Request for Admissions X, Y and Z,

15 you know, you didn't really answer the question or whatever

16 the issue is.  And tell them that if they don't supplement,

17 you intend to file a motion with the Court to compel them to

18 answer those questions.

19        If either side has case law that pertains to an

20 issue, you should share those case law citations.  But

21 ultimately, you should confer fully to see if you can reach

22 an agreement.

23        And if you have conferred thoroughly and you still

24 can't reach an agreement, that's fine.  Then whomever would

25 file their motion with Court, and I would just resolve it

1    that way.

2         Ms. Grays, do you have questions about that?

3         MS. GRAYS:  I just want a couple questions.

4         One, is that in conferring with Mr. Kaufmann he

5    believes that I must reference the actual request where --

6    that I made of Navient in order for him to comply with the

7    discovery rules, and I believe that it's -- I don't have to

8    go into detail because the rules require -- provide a duty

9    of all parties to supplement responses and disclosures

10   throughout the course of litigation.

11        And so I would like to make some clarification on

12   that point.

13        THE COURT:  So if I understand your question

14   correctly, the parties are required to be specific when they

15   confer.  So it's not enough to just call the other side and

16   say, Hey, I think you need to do some supplementing, you

17   need to be specific about what you feel they didn't do or

18   how they failed to either answer something fully or

19   supplement something, but you have to be specific so that

20   they can go back and look and realize, Oh, yeah, we did

21   forget to do something.  Or take a look at it and point out

22   to you, No, we did comply with this fully and, you know, go

23   look at these documents, Bates-numbered whatever.

24        But the conferral is expected to be thorough,

25   which means the parties need to be specific with each other

1    about whatever the issues are so that you can have a

2    constructive conversation around it, hopefully reach an

3    agreement on your own.

4          Otherwise, if it's too vague, the other side is at

5    a -- it doesn't really have the ability to effectively

6    respond to something that's too vague.  So I don't know if

7    that gets it to what you are asking, though.

8          MS. GRAYS:  Partially just because Navient uses

9    vagueness when, you know, I believe it's been very clear and

10   so there's that difference of opinion.

11         And in being specific and stating certain actions

12   that have occurred that have not had any documentation

13   produced in reference to those actions is specific enough in

14   that I do not need to go through requests for production,

15   interrogatories or admissions to justify the defendant's

16   requirements to produce documents in this proceeding,

17   regardless of what request I have made of them in

18   particular.

19         THE COURT:  So I'm still not quite following.  Can

20   you give me an example of what you want them to supplement

21   and what you feel is the only information you need to give

22   them to ask them to supplement.

23         MR. KAUFMANN:  Your Honor --

24         MS. GRAYS:  Sure, the -- okay.

25         THE COURT:  Hold on one second.  Go ahead,

1  Ms. Grays.

2      MS. GRAYS:  The fact that the late payments were

3  removed after the litigation started and there's no records

4  of them being removed, no records of communications to

5  consumer reporting agencies asking them to be removed, the

6  -- my loans were changed to a different student loan

7  servicer abruptly.  There's no documents based on that.

8  There's no documents based on the change of the 150-day late

9  payment the Colorado Attorney General referred to, and that

10  that was changed to 120.  This is no documents of that,

11  nothing regarding that.

12      THE COURT:  And have you served written discovery

13  requests asking for that type of information or asking for

14  those documents?

15      MS. GRAYS:  I have served requests asking -- these

16  things happened as discovery was going on, right?  So as in

17  October of 2020, we were getting close to the end of

18  discovery.  And then the Court stayed discovery because of

19  the disputes that were going on.  So it's -- there's been so

20  much time.  And then because discovery was kind of started

21  and stopped and then now the only thing left is the

22  depositions, and then when I tried to get the scheduling

23  order amended and that was denied.

24      So I don't -- I'm saying that they have a duty to

25  do so under the rules pertaining to discovery and

1 disclosures, regardless of my request for them to have

2 produced the fact that they changed my student loan servicer

3 or they were supposed to remove this late payment and I

4 don't have any record of that.

5         THE COURT:  All right.  So, Mr. Kaufmann, I will

6 hear from you.

7         But, Ms. Grays, one thing for you to understand is

8 they only have an obligation to supplement if whatever has

9 happened is -- has information that is responsive to a prior

10 request that you have served on them -- a prior written

11 discovery request, or if it's pertinent to their initial

12 disclosures.

13         However, parties often confuse federal court

14 initial disclosures with state court.  So federal court

15 under 26(a)(1), a party discloses documents and things that

16 they would rely upon to support their defenses, or in your

17 case, to support your claims.

18         So just because there's stuff out there, if

19 Navient is not relying on that in support of their defenses,

20 it's not something they have an obligation under 26(a)(1) to

21 disclose and, therefore, there's no obligation under 26(e)

22 to supplement.  And that's different in state court.  It's

23 broader in state court in terms of what 26(a)(1) disclosures

24 encompass.  But, Mr. Kaufmann, I will hear from you.

25         MR. KAUFMANN:  Thank you, Your Honor.

1          Just to clarify one thing that Ms. Grays just

2    said, I don't believe that Court did stay discovery.  The

3    discovery cutoff was vacated about a year ago, but discovery

4    wasn't stayed in October.  Ms. Grays filed a motion to stay

5    while she filed a petition to the Tenth Circuit and Supreme

6    Court, but the District Court denied the motion to stay.

7          But as to the issue that she has raised -- and,

8    first of all, I know the Court has said that we don't want

9    to get into or necessarily dive into it.  Right now you

10   prefer that we file written briefs.

11         But essentially, how you characterized it was

12   accurate.  We spoke on the phone, I think it was last week,

13   Ms. Grays told Navient that we need to supplemental

14   discovery responses and disclosures.  It might have just

15   been I think essentially just discovery response, I don't

16   know that disclosure was there, I don't know, but she told

17   us we need to supplement our discovery responses and what we

18   could do to get supplement discovery responses.  I told Ms.

19   Grays that as far as Navient is aware that, you know, we

20   certainly satisfied our disclosure requirements under the

21   discovery rules as pertaining to Ms. Grays's request.  I

22   don't believe that we have anything that needs to be

23   supplemented, but if she could specify the requests that she

24   believes are now deficient we can look at that, and she

25   refused to identify which requests she is talking about,

1    which I believe is the issue that she's raising on the call.

2            She -- it seems to me that she wants the Court to

3    simply order Navient to supplement any and all of its

4    requests, which, of course, is already the rule, but if

5    there are specific requests that she believes Navient has

6    failed to supplement and that needs to supplement, I would

7    ask that the Court instruct Ms. Grays to tell Navient what

8    those requests are (indiscernible).

9            THE COURT:  All right.  And so, Ms. Grays, also in

10   order to have an effective conferral, you have to be

11   specific, as well.  And, again, it's not enough that certain

12   things have happened, and just because things are happening,

13   that doesn't give rise to the obligation to supplement.

14           What gives rise to the obligation to supplement is

15   if things have happened and then that generates facts and

16   information that is relevant to some response that they have

17   given to some written discovery request that you have

18   already put out there, they have got the obligation to

19   supplement with that.

20           So that means you are going to have to be

21   specific.  And so, for example, point out to them, you know,

22   that you issued Requests for Production Number 9 and that

23   request asks for whatever it asks for.  And some of these

24   things that have since happened, you know, are somehow

25   responsive to that request and, therefore, you feel they

1  have an obligation to supplement that response by providing

2  documents related to, you know, whatever that subsequent

3  transaction was.

4          Or you know, you issued Interrogatory Number 4,

5  which asks them to describe whatever.  And you feel that

6  with whatever has since happened, that that information is

7  responsive to that interrogatory and you feel that they need

8  to supplement their response to that interrogatory with, you

9  know, information related to this thing that happened later.

10  But you are going to have to be specific in that regard.

11          Do you have questions about that?

12          MS. GRAYS:  No.

13          THE COURT:  Okay.  And so do I need to -- with the

14  way this case is postured, I have given you a deadline to

15  provide your supplemental responses.

16          I think I heard Ms. Grays say the only other thing

17  to be left -- or left to be done would be depositions.

18          So do I need to set a deadline here to give you

19  time to complete depositions?

20          MS. GRAYS:  Yeah.  I mean, that is a large part of

21  the continued discovery issue, is they have refused to

22  provide a date and are denying me the ability to depose

23  certain individuals.  So I don't know if setting a date or

24  us filing the motion -- or I have to file the motion, so I

25  don't know if setting a date is really the right way,

1  because depending on the timing of the decision on the

2  motion, you know, so I don't know.

3          THE COURT:  Okay.  I'm going to --

4          MR. KAUFMANN:  Your Honor, if I might just be

5  heard a moment.

6          I think that, you know, based on the issues that

7  Ms. Grays (indiscernible), there are other disputes in

8  addition to the depositions that are (indiscernible), but as

9  far as Ms. Grays is concerned, off the top of my head, it

10  would be the subpoenas to the Colorado Attorney General's

11  Office that she wants to seek to compel on.  But in any

12  regard, I think she (indiscernible) the deposition she

13  (indiscernible) in attempting to confer with Ms. Grays for

14  many months about that,

15          And again, I don't necessarily think that we want

16  to get into all this now right now.  I think perhaps that

17  laying it out in written brief would be the better way to

18  address it, but just to summarize it, Navient has agreed to

19  present several employees for deposition to Ms. Grays, but

20  she has not (indiscernible) depositions.  Navient has also

21  notified Ms. Grays that it would not agree to present

22  several other employees for deposition because they are, at

23  most, briefly and tangentially involved in the case.

24          She -- but she has not (indiscernible) deposition

25  (indiscernible) protective order.  And then she has for

1  months been refusing to confer on the scope of the 30(b)(6)

2  deposition.  So we haven't yet notified her that if it were

3  to jump to certain topics that she identified, but she has

4  not -- she has not conferred with us about that despite

5  multiple requests, nor has she submitted the notice so that

6  we may prepare the issue for the Court (indiscernible).

7          This is a bit more of an explanation than I had

8  intended, but essentially there are a lot of issues with the

9  depositions that have been pending for many months and we

10  have been waiting for Ms. Grays to finish her appeal in this

11  case.

12          THE COURT:  All right.  Well, I think we are just

13  going to have to take those issues as they arise.  I'm going

14  to set a deadline for you all to complete depositions.  I'm

15  going to set a dispositive motion deadline because this case

16  needs to continue to move forward as best it can, despite

17  there being various discovery issues and discovery disputes

18  along the way.

19          So the parties will need to complete depositions

20  by April 15 of 2022.  I note from the scheduling order in

21  this case that each party is limited to seven depositions,

22  excluding expert depositions.

23          MS. GRAYS:  Just a note.  Navient has already

24  completed its depositions.  It's just plaintiff.

25          THE COURT:  Okay.  Then is that accurate, Mr.

1    Kaufmann?

2            MR. KAUFMANN:  I don't believe that we deposed
3    plaintiff's expert and that I think that if this case
4    continues, that we would have to do that.

5            MS. GRAYS:  I would object to that, Your Honor.
6    This -- these depositions were already decided -- or when
7    discovery closed, Navient had already served its Notice of
8    Depositions and completed its depositions.  It did not seek
9    that depose the expert at all.

10           And the only reason why this issue is being
11   brought up today is because plaintiff has not been able to
12   complete depositions, as were the subject of previous
13   hearings where the Court ordered Navient to complete the
14   depositions and make available the people requested in one
15   day.

16           And then Navient has still failed to do that by
17   not allowing or identifying the person who would be
18   responding on Navient's behalf.

19           So plaintiff has been trying to come up with a
20   mutually agreeable deposition date and time instead of
21   serving -- serving a unilateral determined date and time
22   upon Navient in an effort, in good faith, to get these
23   depositions conducted as soon as possible.

24           So that Navient has completed all of its
25   depositions.

1           THE COURT:  All right, I'm not going to take that

2   issue up right now.  If there's a disagreement, confer, file

3   a motion if either side needs to and we will deal with it

4   then.

5           So the deadline for depositions will be April 15

6   of 2022 and your dispositive motion deadline will be May 16,

7   2022.  And we will set this matter for a telephonic final

8   pretrial conference and the courtroom deputy will take a

9   look at the calendar and she will give us a date option.

10          COURTROOM DEPUTY:  We could set that for August 2,

11  2022 at 10:30.

12          THE COURT:  Ms. Grays, does that work for you?

13  Let me take --

14          MR. KAUFMANN:  Could you say the date and time one

15  more time, please.

16          THE COURT:  August 2, 2022 at 10:30 a.m.

17          MS. GRAYS:  Yes, I can do that.

18          THE COURT:  Okay.

19          MR. KAUFMANN:  I don't have my calendar -- I'll

20  take a look at my calendar.  I assume that will work.  If

21  not for me, then for Dennis, but I'm almost positive that is

22  fine with me.

23          THE COURT:  So we will set it for the telephonic

24  final pretrial conference for August 2, 2022 at 10:30 a.m.

25  You will need to submit your proposed final pretrial

1    conference pretrial order seven days before that date.

2         Ms. Grays, if you are not familiar with the

3    proposed final pretrial order, it's similar to the

4    scheduling order that you did in this case.  There's a form

5    of order available on the U.S. District Court's website.

6    There's different sections where you have to put in your

7    information, defendant has to enter their information, so

8    you have to work together and cooperatively to put that

9    document together and get it submitted to the Court.

10         It's important that each side follows the

11   instructions for each section that are provided in that form

12   order that's available on the website.

13         So you will submit that seven days in advance.  I

14   will review that proposed order before the conference.  If

15   the form order is in the correct order and you have all

16   followed the instructions correctly, then I will simply

17   issue that final pretrial order before the conference.  I

18   will vacate the conference and then I will give you

19   instructions for getting your trial day from Judge Martinez.

20         On the other hand, if there are issues with what

21   you submit, we'll convene the conference.  I will explain

22   what changes you need to make to your materials and I will

23   give you a deadline to resubmit them.

24         All right.  With that, I have to move on to other

25   matters.  So I thank you both for your time.  I thank you

1    both for your patience and we will --

2           MR. KAUFMANN:  Your Honor, I'm sorry.  Can I raise

3    one final issue quickly just to bring it to the Court's

4    attention?

5           THE COURT:  Go ahead.

6           MR. KAUFMANN:  I apologize for (indiscernible),

7    but this case has been going on for several years, at least

8    more than a year and a half now, and I wanted to

9    (indiscernible) request leave with you, request terminology

10   or just get the Court's thoughts on motions.  Navient would

11   like to move for sanctions to dismissal for (indiscernible)

12   in this case for several reasons.

13          THE COURT:  You would like to do what?  I can't

14   quite understand you.  You want to do what?

15          MR. KAUFMANN:  I'm sorry.  Navient would like to

16   request sanctions including dismissal of this case for want

17   of prosecution.

18          There are several grounds for it, but I'm not -- I

19   won't to get into it, but (indiscernible) writing a motion

20   and I wanted to know what the Court's procedure or

21   preference for that type of motion would be.

22          THE COURT:  You need to check Judge Martinez's

23   Practice Standards and see if his Practice Standards address

24   that.

25          MR. KAUFMANN:  Okay.

1             THE COURT:  All right.  Thank you.  We'll adjourn.

2             (Whereupon, the within hearing was then in

3     conclusion at 12:42 p.m.)

4

5

6                     TRANSCRIBER'S CERTIFICATION

7     I certify that the foregoing is a correct transcript to the

8     best of my ability to hear and understand the audio

9     recording and based on the quality of the audio recording

10    from the above-entitled matter.

11

12    /s/ Carol Patterson              February 7, 2022

13    Signature of Transcriber              Date

14

15

16

17

18

19

20

21

22

23

24

25