Transcript of Tiffany Grays
Conducted on February 18, 2021

1 (1 to 4)

```
                                      1
1         IN THE UNITED STATES DISTRICT COURT
2             FOR THE DISTRICT OF COLORADO
3  ------------------------------x
4  TIFFANY GRAYS,              :
5          Plaintiff           :
6      vs                      : Civil Action No.
7  NAVIENT CORPORATION et al., : 1:20-cv-00452-CPG
8          Defendants          :
9  ------------------------------x
10
11
12
13              Oral deposition of
14                  TIFFANY GRAYS
15
16           VIA VIDEO/TELECONFERENCE
17           THURSDAY, FEBRUARY 18, 2021
18              12:16 p.m. EASTERN TIME
19
20
21
22
23 Job No.: 351993
24 Pages: 1 - 152
25 Reported by: Lisa V. Feissner, RDR, CRR, CLR
```

```
                                      2
1  A P P E A R A N C E S:
2  ON BEHALF OF PLAINTIFF:
3      TIFFANY GRAYS
4      PRO SE
5      1124 Kenton Street
6      Aurora, Colorado 80010
7      legalgrays@gmail.com
8
9  ON BEHALF OF DEFENDANTS NAVIENT CORPORATION
10 and NAVIENT SOLUTIONS, LLC:
11     JORDAN S. O'DONNELL, ESQUIRE
12     HINSHAW & CULBERTSON LLP
13     53 State Street
14     27th Floor
15     Boston, Massachusetts 02109
16     617-213-7000
17     jodonnell@hinshawlaw.com
18
19 A L S O  P R E S E N T:
20     JILLIAN BARICELLI, A/V Technician
21
22
23
24
25
```

```
                                      3
1              C O N T E N T S
2  EXAMINATION OF TIFFANY GRAYS            PAGE
3      By Mr. O'Donnell                      5
4
5
6              E X H I B I T S
7          (Attached to transcript)
8  GRAYS DEPOSITION EXHIBIT                PAGE
9   1  Notice of Taking Deposition           6
10  2  Navient record update request        45
11     dated 10/11/19
12     PLF-02921
13  3  Various correspondence to Tiffany Grays  55
14     PLF-00342 - PLF00350
15  4  Plaintiff's Rule 26(a)(1)            63
16     Initial Disclosures
17  5  Equifax Credit Report for Tiffany Grays  81
18     As of: 11/05/2012
19     PLF-00595 - PLF-00644
20  6  (Intentionally omitted)
21  7  (Intentionally omitted)
22  8  Plaintiff's First                   109
23     Supplemental Disclosures
24  9  (Intentionally omitted)
25
```

```
                                      4
1           E X H I B I T S (continued)
2          (Attached to transcript)
3  GRAYS DEPOSITION EXHIBIT                PAGE
4  10  Letter to Sharon E. Hamm, Esq.      147
5      From Donna Dalton, Ally Bank
6      dated June 25, 2018
7      PLF-02947
8  11  (Intentionally omitted)
9  12  Colorado Department of Human Services  149
10     Med-9 form for Tiffany Grays
11     PLF-02950
12 13  Letter to Tiffany T. Grays          149
13     from Dr. Anna Plunkett, MD
14     dated 1/7/2019
15     PLF-02951
16 14  Resumé                              101
17
18
19
20
21
22
23
24
25
```

Transcript of Tiffany Grays
Conducted on February 18, 2021
2 (5 to 8)

**Page 5**

1         P R O C E E D I N G S
2         TIFFANY GRAYS,
3 having been first duly sworn, was examined and
4 testified as follows:
5         EXAMINATION
6 BY MR. O'DONNELL:
7   Q  Good morning, Ms. Grays. How are you
8 today?
9   A  **Good morning. I'm fine.**
10   Q  Could you spell your name for the record,
11 please?
12   A  **My whole name?**
13   Q  Yes, please.
14   A  **Including middle, or just first and last?**
15   Q  First and last is fine.
16   A  **Tiffany, T-I-F-F-A-N-Y, G-R-A-Y-S.**
17   Q  Thank you. As I said, good morning. As I
18 believe you know, my name is Jordan O'Donnell. I
19 represent Navient Solutions in the lawsuit you
20 filed in the District of Colorado -- in the United
21 States District Court for the District of
22 Colorado. Are you familiar with that lawsuit?
23   A  **Yes.**
24   Q  And to confirm, you are pro se in that
25 matter? You have no attorney, correct?

**Page 6**

1   A  **Correct.**
2   Q  And there's no attorney here today
3 representing you?
4   A  **Correct.**
5   Q  And is English your first language?
6   A  **Correct.**
7       MR. O'DONNELL: Could we please pull up
8 Exhibit Number 1.
9       (Exhibit Grays-1 marked for identification
10 and attached to the transcript.)
11 BY MR. O'DONNELL:
12   Q  Ms. Grays, have you seen this document
13 before?
14   A  **Yeah -- yeah.**
15   Q  And you agree this is your Notice of
16 Deposition that compels you to be here today?
17   A  **I don't know. I need to look at my**
18 **e-mails.**
19   Q  Okay. But you agree we noticed your
20 deposition in this matter for today?
21   A  **You did.**
22   Q  Okay. And have you ever given deposition
23 testimony before?
24   A  **I have.**
25   Q  And approximately how many times would you

**Page 7**

1 say you've done that?
2   A  **Once.**
3   Q  And in what case was that?
4   A  **Auto Mart.**
5   Q  Could you clarify, is that the name of the
6 case?
7   A  **That is the defendant.**
8   Q  Were you the plaintiff in that case?
9   A  **Yes.**
10   Q  Okay. So you're familiar with how
11 depositions work generally?
12   A  **No.**
13   Q  Okay. Well, in that case I'll go over
14 some ground rules that will hopefully help things
15 move smoothly.
16       As you were sworn in, everything you say
17 today is under oath. You have the same obligation
18 to tell the truth as if you were testifying in a
19 courtroom.
20       The court reporter is here, as you can see
21 on the Zoom, transcribing everything. Because of
22 that, we'll have a -- although we are on video and
23 it's being recorded, we will have a written
24 transcript, so in order to make that easiest to
25 understand, it would be best if we could not speak

**Page 8**

1 over one another. If you could let me finish my
2 question before you begin your answer, even if you
3 know what the question will be, and I'll extend
4 the same courtesy to you.
5       I would ask that you speak loudly and
6 clearly. If the question calls for a "yes" or
7 "no," for example, please answer with a "yes" or
8 "no" rather than shaking your head.
9       I will try to make my questions as clear
10 as possible. If you don't understand one, please
11 ask me to clarify, and I'll repeat or rephrase it.
12 But if you answer, we will assume you understood
13 the question.
14       We are entitled to your best estimate and
15 recollection of events, but we ask that you don't
16 speculate or guess.
17       If you need to take a break at any time to
18 use the rest room or whatnot or get a drink of
19 water, that's fine. But if you do have a question
20 pending before you, we ask that you answer it
21 first.
22       As you are pro se, you are able to make
23 objections to questions. They may be considered
24 later by the judge. Would you want to stipulate
25 to reserving objections, except as to the form of

Transcript of Tiffany Grays
Conducted on February 18, 2021

7 (25 to 28)

25

1  Q  Do you know what the current total balance
2  on all of your students are -- or is, rather?
3  A  No.
4  Q  Have you taken out any private student
5  loans?
6  A  No.
7  Q  Have you ever consolidated your student
8  loans?
9  A  Yes.
10 Q  And do you recall when you did that?
11 A  No.
12 Q  Have you or do you receive monthly
13 statements from Navient related to your student
14 loans?
15 A  No.
16 Q  You've never received any in the mail?
17 A  No, not monthly.
18 Q  How often -- well, let's backtrack.  Have
19 you ever received statements from Navient
20 regarding your student loans?
21 A  Yes.
22 Q  And when was that?
23 A  I don't know.
24 Q  How often would you say you receive those
25 monthly statements -- or rather, excuse me, those

26

1  statements?
2  A  Once a year.
3  Q  And is that present -- presently you're
4  receiving a statement once a year?
5  A  Yes.
6  Q  Have you ever received statements more
7  frequently?
8  A  No.
9  Q  Have you ever accessed your loan balance
10 information through Navient's website?
11 A  Yes.
12 Q  Do you still currently have access through
13 Navient's website?
14 A  Yes.
15 Q  What type of records do you keep about
16 your payment history to Navient?
17 A  I don't.
18 Q  Do you know when you last made a payment
19 on any of those student loans that Navient
20 services?
21 A  No.
22 Q  Do you know if it was in the last two
23 years?
24 A  No.
25 Q  Last four years?

27

1  A  No.
2  Q  Are you currently able to make payments to
3  Navient on your student loans?
4  A  No.
5  Q  Have you ever made any payments to Navient
6  on your student loans?
7  A  No.
8  Q  Do you have any plans to make future
9  payments to Navient on your student loans?
10 A  Not at this time.
11 Q  And why is that?
12 A  Because I'm disabled.
13 Q  And to clarify, when you said you've never
14 made payments to Navient on your student loans,
15 that refers to all of them that you've had,
16 whether they were consolidated or otherwise?
17 A  Correct.
18 Q  Is it fair to say in the lawsuit we're
19 here for today, you are -- you've made allegations
20 related to the credit reporting of your loans with
21 Navient?
22 A  Correct.
23 Q  And could you describe what you contend is
24 inaccurate or improper about the credit reporting?
25 A  Navient reported incorrect information

28

1  regarding payments on my account.
2     THE WITNESS:  I'm sorry, the plumber is
3  here.  My pipes burst.  Can I let him in?
4     MR. O'DONNELL:  Yeah.  We can go off the
5  record for a minute.
6     THE WITNESS:  Okay.  Yeah, just a couple
7  minutes.  Thank you.
8     MR. O'DONNELL:  Sure.
9     (Recess from 12:43 p.m. until 12:50 p.m.)
10 BY MR. O'DONNELL:
11 Q  Ms. Grays, before we took a break, you
12 mentioned your dispute in this case was about
13 Navient allegedly reporting incorrect information
14 regarding payments.  Could you elaborate on that,
15 specifically what you allege was inaccurately
16 reported regarding which payments?
17 A  In 2014, Navient reported incorrect late
18 payments on my accounts.
19 Q  And how were they incorrect?
20 A  Because I wasn't supposed to make
21 payments.
22 Q  So you're alleging that they reported you
23 late when your payments were not due?
24 A  Correct.
25 Q  And why were you not supposed to make

Transcript of Tiffany Grays
Conducted on February 18, 2021

11 (41 to 44)

---

**41**

1  A  What I am entitled to, what rights I have,
2  what Navient has -- how Navient is servicing my
3  loans, what a grace period is, what a in-school
4  deferment is, what a forbearance is, what an
5  administrative forbearance is.
6  Q  Earlier you said that you were planning to
7  amend your Complaint because Navient was
8  reporting -- had reported you delinquent related
9  to a period in 2014 when you were either in grace
10 period or in in-school deferment; is that correct?
11 A  Yes.
12 Q  But you testified just now that you are --
13 you do not contend that there are any inaccuracies
14 on your credit report as it relates to the loans
15 Navient services.
16 A  Not now. It was, prior to this lawsuit.
17 Q  So you're planning to amend your Complaint
18 related to a credit reporting that is no longer
19 appearing on your credit reports?
20 A  I'm planning to amend my Complaint
21 regarding credit reporting that damaged my
22 creditworthiness for over six years.
23 Q  But to answer the question, it is related
24 to credit reporting that no longer appears on your
25 credit reports?

**42**

1  A  Yes. It no longer appears on my credit
2  report.
3  Q  And when you disputed the credit reporting
4  previously, would you agree Navient sent you
5  correspondence indicating that it had investigated
6  your disputes and indicating whether it had either
7  verified the information as accurate or made any
8  changes to it?
9  A  I need you to repeat that.
10 Q  In response to your disputes of the credit
11 reporting, would you agree Navient did send you
12 correspondence indicating that it had investigated
13 your claims and indicating whether it had either
14 verified the information as accurate or made any
15 changes to your credit reporting?
16 A  Yes.
17 Q  Is there any other credit reporting you
18 contend is inaccurate or was inaccurate besides
19 that which we've discussed?
20 A  No.
21 Q  Are there any other claims you have in
22 this lawsuit besides those related to the credit
23 reporting?
24 A  No.
25 Q  Do you allege that Navient forced you to

**43**

1  pay a loan that was not yours?
2  A  Yes.
3  Q  Could you elaborate on that?
4  A  In response to one of my -- one of the
5  disputes Navient received, Navient, in its
6  correspondence, stated that it was removing an
7  account from my credit report.
8  Q  So that is another dispute you have or
9  claim you have besides that related to the credit
10 reporting?
11 A  Yes.
12 Q  And do you recall when Navient made this
13 statement?
14 A  Not exactly.
15 Q  And when you say removing an account, what
16 do you mean by that?
17 A  I'm just reading what Navient said. They
18 said they were removing, and they gave an account
19 number, from my credit reports.
20 Q  Okay. And based on that statement, what
21 do you contend was improper?
22 A  That Navient had reported an account
23 incorrectly on my credit reports that was not
24 mine.
25 Q  So Navient said, this account belongs to

**44**

1  someone else?
2  A  Navient said it was removing an account
3  from my credit report.
4  Q  Okay. And I'm asking -- you also
5  testified just now that they were removing an
6  account from your credit report that was not
7  yours. So I'm asking if that's what Navient, in
8  fact, said --
9  A  Why would Navient remove an account that
10 was mine?
11 Q  I mean, it -- well, that's what I'm trying
12 to understand. So you're --
13 A  That's what I'm trying to understand --
14    (Cross-talk.)
15 Q  Because Navient said it was removing an
16 account from your credit report, that means they
17 were reporting an account that did not belong to
18 you? That's what you understood it to mean?
19 A  Yes.
20 Q  Would it refresh your recollection if I
21 mentioned in your Complaint you said that this was
22 stated in a letter dated October 11th, 2019?
23 A  I'm sorry, what -- I don't understand what
24 the date -- I don't --
25 Q  I'm trying to understand when you -- I

Transcript of Tiffany Grays
Conducted on February 18, 2021

12 (45 to 48)

**45**

1  asked you when you -- or rather, when Navient said
2  that they were removing an account that wasn't
3  yours, and I asked you when that was, and you
4  didn't recall. And I'm telling you that in your
5  Complaint you reference a date, October 11th,
6  2019.
7  **A   Okay.**
8  Q   I'm asking if that refreshes your
9  recollection as to when this event happened.
10 **A   If that's what I put in the Complaint,**
11 **then that's what I understood at the time. I**
12 **don't have the Complaint in front of me.**
13 Q   Sure.
14     MR. O'DONNELL:  Could we pull up Exhibit
15 2, please.
16     A/V TECH:  Sure thing.
17     Everyone stand by.
18     (Exhibit Grays-2 marked for identification
19 and attached to the transcript.)
20 BY MR. O'DONNELL:
21 Q   Ms. Grays, if you could take a look at
22 what's been put on the screen as -- marked Exhibit
23 Number 2.
24     MR. O'DONNELL:  And if we could scroll
25 down to the bottom, please. I don't know if

**46**

1  there's a way to make the whole page visible.
2  Q   You see on the bottom it says -- there's a
3  Bates stamp in the center, PLF-02921?
4  **A   Yes.**
5  Q   And this is a document that you produced
6  in this litigation?
7  **A   Yes.**
8  Q   And you see that this is a -- you'd agree
9  this is a letter addressed to you from Navient
10 dated October 11th, 2019?
11 **A   Yes.**
12 Q   And please review the document, and when
13 you're done, I'm going to ask you if this is the
14 correspondence you're referring to when Navient
15 said it removed an account or -- an account from
16 your credit report that was not yours.
17 **A   Yes.**
18 Q   It is that correspondence?
19 **A   It is.**
20 Q   Okay. And could you explain where it says
21 that Navient removed an account that was not
22 yours?
23 **A   It doesn't say that was not mine.**
24 Q   Okay. So why do you believe that it was
25 not yours?

**47**

1  **A   Because why would Navient remove an**
2  **account that was mine?**
3  Q   Would you agree it would be possible that
4  Navient would just stop reporting a particular
5  loan after a certain amount of time?
6  **A   No. Navient has continuously reported**
7  **every loan I've had with Navient.**
8  Q   Okay. And this number that is referenced,
9  the loan number there starting with 973, is that a
10 loan number that you recognize?
11 **A   No. I don't -- I don't know. Navient**
12 **hasn't given me any evidence regarding this loan.**
13 Q   Okay. And what else do you allege with
14 regards to Navient reporting a loan that was not
15 yours?
16 **A   What else do I -- whatever is in my**
17 **Complaint.**
18 Q   Okay. Do you recall if you made a request
19 to Navient in January 2020 asking to have the
20 money and interest associated with this account
21 removed from your loans?
22 **A   Yes.**
23 Q   So what exactly were you requesting there?
24 **A   That whatever money, whatever interest**
25 **that was associated with that loan should also be**

**48**

1  **removed.**
2  Q   Okay. So do you believe that there was I
3  guess additional amounts added to your loan
4  balance related to this account that you contend
5  is not yours?
6  **A   Yes.**
7  Q   Have you reviewed any transaction
8  histories or other account records that show those
9  amounts added to your account?
10 **A   Again, Navient hasn't produced anything**
11 **regarding this loan.**
12 Q   So do you believe that your account
13 records would reflect the amount of -- or rather
14 the balance from this account?
15 **A   I can't tell.**
16 Q   Are there any other allegations you're
17 making in this lawsuit besides those that we've
18 discussed?
19 **A   No.**
20 Q   You referenced filing bankruptcy
21 previously. Do you recall exactly when you filed
22 bankruptcy?
23 **A   2015.**
24 Q   And could you state what the reason was
25 that you filed bankruptcy?

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Tiffany Grays
Conducted on February 18, 2021

38 (149 to 152)

### 149

```
1    Q   Okay.  Of the documents you've produced in
2  this case, how many would you say you've also
3  produced in your other lawsuits?
4    A   I don't know.
5    Q   Would you say it's several hundred of the
6  pages, at least?
7    A   Yeah.
8        MR. O'DONNELL:  Can we look at Exhibit 12,
9  please.
10       A/V TECH:  Sure.
11       Everyone stand by.
12       (Exhibit Grays-12 marked for
13 identification and attached to the transcript.)
14 BY MR. O'DONNELL:
15   Q   Ms. Grays, Exhibit 12 is a document Bates
16 stamped PLF-2950 that you produced in this matter.
17 There's also Bates stamped in the right-hand
18 bottom corner, PLF-177.  Do you know what lawsuit
19 that is from?
20   A   No.
21       MR. O'DONNELL:  Could we look at Exhibit
22 13.
23       A/V TECH:  Sure.
24       Everyone stand by.
25       (Exhibit Grays-13 marked for
```

### 150

```
1  identification and attached to the transcript.)
2  BY MR. O'DONNELL:
3    Q   Ms. Grays, this is a document that you've
4  produced, Bates stamped PLF-2951.  It also has a
5  Bates stamp in the right-hand corner, PLF-61.  Do
6  you know what that other Bates stamp is from or
7  what lawsuit it's from?
8    A   No.
9    Q   In the top right-hand corner, there's a
10 sticker on it, but I can represent to you that it
11 says, Exhibit -- oh, see it there?  It's moved.
12       MR. O'DONNELL:  Thanks.
13   Q   You can see it says, Exhibit 3.  Do you
14 know what that letter is an exhibit to?
15   A   No.
16       MR. O'DONNELL:  I don't have any further
17 questions.  Thank you for your time.
18       COURT REPORTER:  Anything else for the
19 record?
20       THE WITNESS:  I would just say that
21 plaintiff is ready to settle.  I never wanted this
22 to go this far.  I would like to move on with my
23 life, and I hope that Navient will make me a
24 legitimate offer and we can move forward.  Thank
25 you.
```

### 151

```
1        MR. O'DONNELL:  I don't have anything
2  further.  Thank you for everyone's time, and thank
3  you, Ms. Grays, and to the court reporter and
4  technicians.
5        A/V TECH:  Of course, of course.
6        Lisa, do you need to get any orders?
7        COURT REPORTER:  Ms. Grays -- oh, okay.
8  All right, she popped off.
9        So Mr. O'Donnell, I just have an order for
10 regular delivery.  Do you need it sooner than
11 that?
12       MR. O'DONNELL:  What's the usual
13 turnaround on that?
14       COURT REPORTER:  Two weeks.
15       MR. O'DONNELL:  That should be fine.
16       COURT REPORTER:  Do you need a rough
17 draft?
18       MR. O'DONNELL:  No.
19       (Off the record at 4:43 p.m.)
```

### 152

```
1            C E R T I F I C A T E
2
3        I, Lisa V. Feissner, RDR, CRR, CLR, do
4  hereby certify that the witness was first duly
5  sworn by me and that I was authorized to and did
6  report said proceedings.
7        I further certify that the foregoing
8  transcript is a true and correct record of the
9  proceedings; that said proceedings were taken by
10 me stenographically and thereafter reduced to
11 typewriting under my supervision; that reading and
12 signing was not requested; and that I am neither
13 attorney nor counsel for, nor related to or
14 employed by, any of the parties to the action in
15 which this deposition was taken; and that I have
16 no interest, financial or otherwise, in this case.
17
18       IN WITNESS WHEREOF, I have hereunto set my
19 hand this 23rd day of February, 2021.
20
21       /s/ Lisa V. Feissner
22       Lisa V. Feissner, RDR, CRR, CLR
```