IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-452-NYW-SKC

TIFFANY GRAYS

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

    Defendant.

---

## RECOMMENDATION RE:
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 183]

---

To finance her continued education, Plaintiff Tiffany Grays took out several student loans, which were serviced by Defendant Navient Solutions, LLC. According to the allegations in her Second Amended Complaint (SAC), in 2014 Navient began incorrectly reporting her payment status to the major credit reporting services and when notified of its errors, failed to investigate or correct the information. She initiated this action for monetary damages as well as injunctive and declaratory relief in February 2020, arguing Navient's actions damaged her credit and prevented her from obtaining auto loans, credit cards, apartments, and jobs. [Dkt. 59-1.]

1

Following a period of discovery, Defendant filed a Motion for Summary Judgment, seeking judgment in its favor on all of Plaintiff's claims. [Dkt. 183.] Plaintiff filed a Response addressing only her claims under the Fair Credit Reporting Act (FCRA). [Dkt. 199.] The Court has reviewed the Motion and its exhibits, has liberally construed Plaintiff's Response,[1] and reviewed Defendant's Reply. No hearing is necessary. For the following reasons the Court RECOMMENDS the Motion be GRANTED.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

## ANALYSIS

---

[1] The Court notes there are several pending motions regarding discovery disputes, but Plaintiff has not indicated these pending disputes affect her ability to respond to the summary judgment arguments. Nor has she filed a motion pursuant to Fed. R. Civ. P. 56(d). Nevertheless, the Court has reviewed the pending discovery matters and concludes these disputes have no bearing on the question of whether Defendant furnished accurate information to credit reporting agencies. Thus, the Court concludes it is appropriate to address the Motion without the necessity of first resolving those disputes.

Plaintiff asserts 10 claims[2] against Defendant including: (1) various violations of the FCRA; (2) conversion; (3) civil theft; (4) unjust enrichment; (5) breach of contract; (6) violations of the Colorado Consumer Protection Act (CCPA); (7) violations of the Colorado Consumer Credit Code (CCCC); (8) violations of the Colorado Uniform Commercial Code (CUCC); (9) breach of fiduciary duty; and (10) negligence.

As a preliminary matter, in Plaintiff's Response to the summary judgment motion, she contends Defendant failed to comply with Judge Martinez's requirement that parties filing for summary judgment include a "Movant's Statement of Material Facts."[3] She notes Defendant instead included a section titled "Statement of Undisputed Facts." [Dkt. 199 at p.2.] Plaintiff, consequently, has not directly addressed any of Defendant's listed facts, but rather, provides her own "Factual Basis Supporting [Defendant's] FCRA Violations and Plaintiff's Damages." [*Id.* at p.3.] But Defendant's use of the word "undisputed" instead of "material," however, is a distinction without a difference. In his practice standards, Judge Martinez requires the parties to provide a list of material facts the movant

---

[2] Although numbered one through twelve, Plaintiff has only asserted ten actionable claims against Defendant. Plaintiff also asserts a "claim" for declaratory judgment. A declaratory judgment, however, provides a remedy for valid federal claims and is not a stand-alone cause of action.

[3] Following her appointment to the United States District Court bench, this case was transferred to District Judge Nina Y. Wang on August 5, 2022. [Dkt. 210.] Judge Wang's practice standards require a section titled "Statement of Undisputed Facts."

believes entitles them to judgment as a matter of law. Despite using a different title, Defendant's statement of facts, in form and substance, does as required. Thus, Plaintiff was not absolved from addressing those facts in accordance with the district judge's practice standards or the Federal Rules of Civil Procedure. When, as here, a responding party fails to address the properly asserted and supported facts, those facts are deemed confessed. Fed. R. Civ. P. 56(e); *Murray v. City of Tahlequah, Okl.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

The Court acknowledges Plaintiff is not represented by counsel in this case, but even so, she is held to the same standard as counsel. Pro se plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). And further, Plaintiff is not a novice to civil litigation. She has filed and prosecuted many cases in this district court with varying degrees of success. In this matter, Plaintiff submitted a statement of facts relevant only to her FCRA claims. Although she does not directly address Defendant's FCRA facts as contemplated in the Rules, the Court liberally construes Plaintiff's response and her statement of the "Factual Basis Supporting [Defendant's] FCRA Violations and Plaintiff's Damages," to examine whether Plaintiff demonstrates disputed issues of material fact warranting a trial on some or all of her FCRA claim(s). But, while choosing to include a "factual basis" regarding her FCRA claim(s), Plaintiff did not include a statement of facts related to her remaining state law claims. The Court, therefore, considers those facts

proffered by Defendant, where appropriately supported by competent evidence, to be undisputed for purposes of analyzing the Motion.

## A.   Fair Credit Reporting Act

Although she asserts many claims, Plaintiff's allegations almost exclusively implicate Defendant's obligations under the Fair Credit Reporting Act. The FCRA requires credit furnishers, like Defendant, to

> provide accurate information to consumer reporting agencies, 15 U.S.C. § 1681s–2(a), and, upon receiving notice of a dispute from a CRA, to (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable, *id.*, § 1681s–2(b).[4]

*Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750–51 (10th Cir. 2009). The FCRA creates a private right of action for willful or negligent noncompliance with subsection (b). *See* 15 U.S.C. §§ 1681n, o. To prevail, a plaintiff must demonstrate the disputed information provided to the CRA was incomplete or inaccurate. *See Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010)).

---

[4] Although it is not clear, to the extent Plaintiff's claim is based on Defendant providing inaccurate information to the credit reporting agencies, it is not cognizable based on 15 U.S.C. § 1681s-2(a). *Pinson*, 316 F. App'x at 751 ("[Section] 1681s-2(a) provides no private cause of action."). Consequently, the Court examines her claim only as to Defendant's obligations under section 1681s-2(b).

5

According to Plaintiff, in 2014, Defendant began erroneously reporting her student loan payments were late. [Dkt. 59-1 at ¶10.] She contends Defendant violated the FCRA when, following notice that she disputed the reporting of her student loan payments as late, it failed to conduct reasonable investigations into her disputes and continued to falsely report inaccurate information. [*Id.* at ¶¶39-53.] Plaintiff also contends Defendant mistakenly reported an account to the credit reporting agencies that did not belong to her. Defendant argues the undisputed material facts establish its reporting was accurate. The Court agrees.

In its Motion, Defendant presents competent evidence—and Plaintiff does not dispute—that as of 2014, it was servicing 16 of Plaintiff's student loans, including 15 Stafford loans and one consolidated loan.[5] [Dkt. 183 at ¶¶1-7.] Plaintiff obtained these loans between July 2001 and July 2013, each secured by a its own Master Promissory Note (MSN) requiring Plaintiff to make payments on terms specified in the MSN, and advising her that interest and other charges could be assessed if she failed to timely pay. [*Id.* at ¶¶1-8, 9-17.] Each MSN also informed Plaintiff that Defendant could notify the credit reporting agencies about late payments.[6] [*Id.* at ¶18.]

---

[5] All 16 loans were later consolidated into a single loan in 2016 with unsubsidized and subsidized parts. [*Id.* at ¶8.]

[6] There is no dispute between the parties that Department of Education guidance instructs loan servicers to refrain from reporting delinquencies until they are at least 90 days past due. *See* Federal Student Aid, Student Loan Delinquency and Default, https://studentaid.gov/manage-loans/default (last visited February 2, 2023).

It is undisputed Defendant was notified in December 2013 of Plaintiff's withdrawal from school on October 27, 2013. [*Id.* at ¶21.] Based on her withdrawal date, Defendant notified Plaintiff her consolidated loan would enter repayment status on January 1, 2014. [*Id.* at ¶23.] Despite the initial and follow-on notifications from Defendant,[7] it is undisputed Plaintiff made no payments on the consolidated loan. [*Id.* at ¶25.] Defendant reported the consolidated loan 90 and 150 days late in April and May 2014, respectively.[8] [Dkt. 204 at ¶14.] Plaintiff's Stafford loans entered a six-month grace period after her withdrawal and were scheduled to enter repayment on April 27, 2014. [Dkt. 183 at ¶24.] But again, she did not make any payments. [*Id.* at ¶29.]

In June 2014, Plaintiff informed Defendant she was again enrolled in school more than half-time, and consequently, Defendant placed all of her accounts into administrative forbearance pending verification of her enrollment status. [*Id.* at ¶¶30-33.] But Plaintiff never provided Defendant verification of her re-enrollment, and therefore, the forbearance expired. On August 1, 2014, her accounts once again entered repayment status. [*Id.* at ¶¶34-35.] When Plaintiff failed to pay, Defendant

---

[7] Nowhere in her Response or her own statement of facts does Plaintiff dispute she received any notices of repayment from Defendant.

[8] The Court takes judicial notice that, based on the January 1, 2014, payment deadline, Plaintiff's account was 119 days past due on April 30. Thus, reporting her account as at least 90 days late as of that time was not inaccurate. And by May 31, her account was precisely 150 days late, which accounts for any apparent mathematical discrepancy.

7

accurately reported her loans 90 and 120 days late in October and November 2014.[9] [Dkt. 204 at ¶14.]

In her Response, Plaintiff contends Defendant's reporting was incorrect because her "loans at all times relevant were in forbearance or deferment." [Dkt. 199 at ¶24.] In support of this, she cites only her declaration, which is simply an identical and unsupported recitation of her argument. [*Id.*] Although, in some circumstances, self-serving statements made in declarations can create genuine issues of fact, this is not one of those occasions. *See Berry v. Chicago Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010) ("If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts."). Plaintiff's declaration provides no indication her averments that her loans were always in forbearance or deferment are based on her personal knowledge or firsthand experience, versus her opinion. Her declaration fails to explain how she knows her accounts were in forbearance or deferment beyond her mere speculation. [Dkt. 199-1 at ¶iv.] At most, her declaration establishes Plaintiff *believed* she was not required to make any payments on her loans. But it fails to create a dispute of material fact over whether her loans were actually in repayment status.

Plaintiff essentially asks this Court to ignore Defendant's conclusive evidence and infer solely based on her declaration that her accounts were not past due.

---

[9] The Court takes judicial notice that, based on an August 1, 2014, payment deadline, Plaintiff's account was 91 days past due on October 31. By November 30, her account was 121 days past due.

"Given the evidence, this inference is not a reasonable one. [The Court] therefore [is] not required to make it in Plaintiff's favor." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1184 (10th Cir. 2013) (citing *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (a court is not required to make unreasonable inferences in favor of the nonmoving party)). The undisputed evidence establishes Defendant accurately reported Plaintiff's payment delinquencies in light of the undisputed fact she never made a payment on any of these student loans.[10]

Turning to Plaintiff's contention Defendant reported an account not belonging to her, Defendant argues there is no competent evidence to support Plaintiff's claim. [Dkt. 183 at pp.14-15.] To be sure, the letter Plaintiff relies on states only that Defendant removed a loan from Plaintiff's credit report. [Dkt. 183-5 at p.29.] Critically, as Plaintiff acknowledged in her deposition, there is no indication in the letter as to why the loan was being removed or that it did not belong to Plaintiff. [Dkt. 183-9 at p.5, 46:23.] Plaintiff's claim is again based solely

---

[10] Plaintiff also seems to argue it was misleading for Defendant to report her accounts as "ok" in March and September 2014 if they were, in fact, 60 days late. Plaintiff cites no authority requiring Defendant to use any marker other than "ok" prior to reporting an account 90 days late or more. Further even if the use of "ok" is misleading, it is not materially misleading to be actionable under the FCRA. "[I]nformation creates a materially misleading impression when it can be expected to *adversely* affect credit decisions. *Hauge v. AmeriHome Mortg. Co.*, 565 F. Supp. 3d 1, 7 (D. Mass. 2021) (citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (emphasis added)). Reporting Plaintiff's accounts as "ok" when they were in fact late could not be expected to adversely affect her credit. Rather, if this reporting is at all misleading, it is in Plaintiff's favor. *See Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1110 (D.N.M. 2013) (A "statement may be misleading if it can reasonably be interpreted in an inaccurate, adverse manner.").

on her own speculation that Defendant would only remove a loan from her credit report if that loan did not belong to her. [*See Id.* at 47:1-2.] Plaintiff's speculation alone, however, is insufficient to create a disputed issue of material fact.

Because Plaintiff cannot "demonstrate 'actual inaccuracies that [Defendant's] objectively reasonable investigation would have been able to discover,'" there is no triable issue as to whether Defendant violated the FCRA. *Hampton v. Barclays Bank Delaware*, 478 F. Supp. 3d 1113, 1136 (D. Kan. 2020) (quoting *Chiang*, 595 F.3d at 29–30) *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021). The Court, therefore, recommends judgment be entered in Defendant's favor on Plaintiff's FCRA claim. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[I]t is difficult to see how a plaintiff could prevail on a claim for damages under [the FCRA] without a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate.").

**B.     Plaintiff's State Law Claims**

    **1. Conversion, Civil Theft, and Unjust Enrichment**

The SAC also includes claims of conversion, civil theft, and unjust enrichment. Plaintiff bases these claims on allegations Defendant erroneously assessed interest and fees and refused to remove these amounts from her accounts. [Dkt. 59-1 at ¶¶75-100.]

The key element to each of these claims is proof the defendant received a benefit or took dominion over property belonging to the plaintiff. *See Van Zanen v.*

*Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1130 (10th Cir. 2008) (noting an element of unjust enrichment under Colorado law is showing defendant received a benefit at plaintiff's expense); *Vickerie v. Diversified Inv. Holdings, Inc.*, No. 19-cv-03256-REB-KMT, 2020 WL 9432908, at *5 (D. Colo. Nov. 13, 2020), *report and recommendation adopted*, No. 19-cv-03256-REB-KMT, 2021 WL 1753514 (D. Colo. Mar. 26, 2021) (noting an element of civil theft under Colorado law is showing defendant knowingly obtained, retained, or exercised control over a thing of value without authorization); *Abbott Lab'ys v. Finkel*, No. 17-cv-00894-CMA, 2017 WL 5517399, at *2 (D. Colo. Nov. 17, 2017) (noting an element of conversion is showing defendant exercised unauthorized dominion or ownership over property of another).

    Here, however, it is undisputed Defendant never took possession of any property or funds that belonged to Plaintiff, let alone refused to return her property. [*See* Dkt. 183 at ¶¶25, 35, 52; Dkts. 183-2 and -3.] Plaintiff testified in her deposition she *never* made any payments (whether toward principal, interest, or fees) on her student loans, and she does not intend to. [Dkt. 11 at p.3, 27:5-17.] The fees and interest Defendant has assessed on Plaintiff's unpaid accounts do not constitute taking possession of Plaintiff's money; it is simply a notation that more money is now due and owing on those accounts based on Plaintiff's failure to make any payments. And because it is undisputed Plaintiff has never made a payment on her outstanding loan balances, and thus, has not made any fee or interest

11

payments, she cannot establish Defendant *received* some benefit at her expense for purposes of her unjust enrichment claim.

Because Plaintiff cannot establish Defendant exercised control over her property or received a benefit at her expense, the Court recommends judgement be entered in Defendant's favor on these claims.

### 2. Breach of Contract and Colorado Uniform Commercial Code

Plaintiff's contract and CUCC claims are based on her allegations Defendant breached the MSNs[11] when it imposed alleged unnecessary fees and interest on her loans. [Dkt. 59-1 at ¶¶101-105, 129-34.] She further alleges Defendant breached the duty of good faith and fair dealing under the CUCC by imposing these fees and interest. [*Id.*]

To maintain a breach of contract claim, a plaintiff must establish (1) the existence of a contract; (2) performance by the plaintiff or justification for nonperformance; (3) failure to perform by the defendant; and (4) resulting damage to the plaintiff. *W. Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *see also Williams v. Owners Ins. Co.*, 621 F. App'x 914, 918 (10th Cir. 2015). Here, however, the evidence is undisputed there was no contract between Plaintiff and Defendant.

---

[11] Plaintiff refers to the "Education Loan/Account Servicing Agreement," and yet has not produced any document with such a title. Because the MSNs included an information sheet regarding servicing of Plaintiff's loans, the Court presumes she is referencing these notes.

Plaintiff's MSNs are between her and various student loan lenders participating in the Federal Family Education Loan Program and those with the Department of Education. [Dkts. 183-4 and -6.] While some of the MSNs include information about Defendant's role as a loan servicer, there is no evidence Defendant is a party to those MSNs. [*See* Dkt. 183-4 at pp.11.] The informational sheet included with some of the MSNs contains no promises or discussions of consideration vis-à-vis Defendant, and it makes clear the distinction between the lender (who is a party to the promissory notes) and the Defendant as servicer (who is not a party to the promissory notes). [*Id.*]

Because Plaintiff has not produced evidence of a contract between her and Defendant, her breach of contract claim cannot survive summary judgment. And without a contract, Defendant similarly cannot be held liable for breaching a duty of good faith and fair dealing under the CUCC. The Court recommends summary judgment be entered in Defendant's favor on both claims.

**3. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105**

The CCPA was enacted by the Colorado legislature to provide a remedy against consumer fraud. *W. Food Plan, Inc. v. Dist. Ct.*, 598 P.2d 1038, 1041 (Colo. 1979). To establish a claim under the CCPA, a plaintiff bears the burden to show: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) the plaintiff suffered injury in fact to a legally protected interest; (4)

13

the challenged practice caused the plaintiff's injury; and (5) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). The entire claim fails if one element is not met. *See Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 399 (Colo. App. 2003) (because the "significant public impact" element of the CCPA claim could not be proven the court did not address the first element), *rev'd in part on other grounds*, 112 P.3d 59 (Colo. 2005).

In her pleadings, Plaintiff alleges Defendant's "refusal or failure to correct errors on the Plaintiff's consumer credit report violates the [CCPA] because they constitute unfair and/or deceptive trade practices." [Dkt. 59-1 at ¶¶110-18.] Defendant argues it is entitled to judgment in its favor because there is no evidence establishing a significant public impact.[12] [Dkt. 183 at p.26.] The Court agrees.

As pleaded in her SAC, Plaintiff has only alleged a wrong specific to her credit information. There are no allegations Defendant has engaged in an unfair or deceptive trade practice affecting the public writ large. Further, given her decision to respond only to Defendant's arguments regarding the FCRA, Plaintiff has not offered any evidence of a public impact beyond the personal impacts she has

---

[12] A more fundamental problem is the alleged conduct does not fall under any of the deceptive trade practices in the CCPA, which is unsurprising given the Colorado legislature's creation of the Consumer Credit Code.

14

alleged. "[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Rhino Linings USA, Inc.*, 62 P.3d at 149. Further, because the undisputed facts establish that Defendant's credit reporting was accurate, she cannot establish the additional elements of her CCPA claim. For these reasons the Court recommends judgment enter in Defendant's favor on this claim.

### 4. Preempted Claims

Defendant contends, and the Court agrees, Plaintiff's claim under the Colorado Consumer Credit Code (Colo. Rev. Stat. § 5-20-109) and her claims for negligence and breach of fiduciary duty are preempted by the FCRA. Congress enacted the FCRA under the authority of the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 2. The Supremacy Clause of the Constitution also gives Congress the power to preempt state law. *See* U.S. Const. art. VI, cl. 2. Where federal and state law conflict, federal law must prevail. *Southwestern Bell Wireless, Inc. v. Johnson County Bd. of County Comm'rs*, 199 F.3d 1185, 1193–94 (10th Cir. 1999). "Federal statutes can preempt state statutes either by an express statement of preemption or by implication. Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1013 (D. Colo. 2012) (citing *Altria Grp. v. Good*, 555 U.S. 70, 76 (2008); *Tarrant Regional Water Dist. v. Herrmann*, 656 F.3d 1222, 1241-42 (10th Cir. 2011)).

15

Relevant here, section 1681t(b)(1)(F) of the FCRA explicitly removes the subject matter of section 1681s–2 from state regulation. 15 U.S.C. § 1681t(b)(1)(F). In her SAC, Plaintiff asserts Defendant violated the CCCC by, *inter alia*, failing to provide information relevant to Plaintiff's inquiries, misrepresenting the amounts she owed, reporting an account allegedly not belonging to Plaintiff, and reporting inaccurate information to the various credit reporting agencies. [Dkt. 59-1 at ¶¶121-26.] These allegations also form the basis of Plaintiff's negligence and fiduciary duty claims, wherein she alleges Defendant failed to properly investigate and correct the errors in her account statements.[13] [*Id.* at ¶¶135-51.] But this conduct is explicitly regulated by the FCRA. *See* 15 U.S.C. § 1681s–2(b) (duties of furnishers of information upon notice of dispute); *see also* Section A, *supra*. Consequently, Plaintiff's claims cannot stand.

* * *

For the foregoing reasons, the Court RECOMMENDS Defendant's Motion for Summary Judgment be GRANTED.

---

[13] In addition, Colorado law "does not find a fiduciary duty to exist between a lender (or here, a lender's agent) and borrower, unless the nature of the business relationship was such that it impelled or induced one party to relax the care and vigilance it would ordinarily exercise in dealing with a stranger." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1365 (Colo. App. 1994). Plaintiff has offered no allegations or evidence of such a relationship and has not identified any other source of duty. Thus, even if Plaintiff's fiduciary duty and negligence claims were not preempted, they would still fail as a matter of law.

DATED: February 8, 2023

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

## ADVISEMENT

The parties have 14 days after service of this recommendation to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within 14 days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).